E-FILED
Monday, 13 August, 2018  05:25:50 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF ILLINOIS**

**SPRINGFIELD DIVISION**

| | |
|---|---|
| MARK COOPER, | No. 3:17-cv-03102-RM-TSH |
| Plaintiff, | |
| v. | Judge Richard Mills |
| BEELMAN TRUCK CO., | Magistrate Judge Tom Schanzle-Haskins |
| | **JURY TRIAL DEMANDED** |
| Defendant. | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Beelman Truck Co. ("Beelman") moves the court, under Rule 56, to enter summary judgment in favor of Defendant Beelman Truck Co. and against Plaintiff Mark Cooper (Cooper) on Plaintiff's claim that Beelman interfered in Plaintiff's rights under the Family and Medical Leave Act (FMLA) and terminated him for absences that allegedly should have been designated FMLA protected leave.  There is no genuine issue of material fact and Defendant Beelman is entitled to summary judgment as a matter of law in that: (1) Plaintiff did not have a qualifying "serious health condition" under the FMLA; (2) Plaintiff did not provide sufficient notice to Beelman as required under its policy; and (3) Beelman did not deny Plaintiff FMLA benefits to which he was entitled because Plaintiff had not used his unused vacation days pursuant to Beelman's policy, and Beelman would have terminated Plaintiff regardless of the application of any FMLA related leave.

## INTRODUCTION

On June 9, 2017, Plaintiff Mark Cooper filed an Amended Complaint alleging Beelman

interfered with Plaintiff's rights under the Family and Medical Leave Act ("FMLA"). The Amended Complaint further alleges that Beelman retaliated against Plaintiff for exercising his rights under the FMLA. Plaintiff claims these rights were violated because Beelman terminated him for absenteeism, which he claims was due to a "serious health condition" linked to a previous worker's compensation claim. [Doc. 9]. Plaintiff has dismissed with prejudice his claims of retaliation under the Illinois Workers' Compensation Act [Doc. 17], leaving only the FMLA interference claim in dispute.

## UNDISPUTED MATERIAL FACTS

1.     Mark Cooper was employed by Beelman Truck Company as an over the road truck driver from March 4, 2014 to October 5, 2016 [*Resignation/termination Report, Appx. 001*].

2.     Beelman has a Policy and Safety Handbook for Company Drivers (Handbook) [*Handbook, Appx. 002-007*].

3.     Mark Cooper signed off on having read and understood the Handbook [*Sign-Off Sheet, Appx. 008*].

4.     Beelman has a FMLA poster posted on the bulletin board in the driver's break room door for all drivers to see [*Butler Dep., Appx. 012*].

5.     On February 17, 2015, Cooper reported to Beelman that he had injured his lower back [*Report of Injury, Appx. 013*].

6.     On February 19, 2015, Cooper went to the Emergency Room at Memorial Medical Center in Springfield, Illinois with complaints of low back pain for two days [*February 19, 2015 Memorial Hospital Final Report, Appx. 014*].

7.    Cooper reported that he had increased pain when leaning forward and his pain increased when he was driving his truck at work due to bouncing [*February 19, 2015 Memorial Hospital Final Report, Appx. 014*].

8.    Cooper was diagnosed as having low back pain and back muscle spasm [*February 19, 2015 Memorial Hospital Final Report, Appx. 018*].

9.    Cooper was prescribed Flexeril, Ibuprofen and home exercises [*February 19, 2015 Memorial Hospital Final Report, Appx. 019*].

10.    The doctor wrote a note stating: "Please stay home from work tomorrow to rest back" [*February 19, 2015 Memorial Hospital Final Report, Appx. 019*].

11.    Cooper was discharged from the hospital on February 19, 2015 [*February 19, 2015 Memorial Hospital Final Report, Appx. 014-021*].

12.    Cooper was excused from work from February 23, 2015 to February 26, 2015 [*Driver Attendance Report, Appx. 022*].

13.    Cooper returned to work without pain or restrictions [*Cooper Dep., Appx. 025*].

14.    Cooper testified he aggravated his back in May of 2016 [*Cooper Dep., Appx. 027*].

15.    Cooper further testified he did not report the injury to Beelman and did not seek medical treatment [*Cooper Dep., Appx. 027*].

16.    Cooper testified that he called Mick Butler, Beelman terminal manager, and told him he was going to take a few days off because his back was hurting from shoveling ash [*Cooper Dep., Appx. 027*].

17.    Cooper did not report any specific incident to Beelman's safety department.  He testified that he didn't feel like it was that bad. [*Cooper Dep., Appx. 028*].

18.     Cooper did not go to a doctor for the aggravation of his back pain in May 2016 [*Cooper Dep., Appx. 026*].

19.     Cooper was issued a traffic citation for using a cell phone while driving on September 2, 2016 [*Cooper Dep., Appx. 029*].

20.     Plaintiff was off work September 5 and September 6 for a colonoscopy. [*Cooper Dep., Appx. 032*].

21.     On September 7, 2016, Plaintiff returned to work and he began to experience a back flare up after driving on a bumpy road. [*Cooper Dep., Appx. 032*].

22.     On September 8, 2016, Cooper went to the Memorial Medical Center emergency room for treatment of his back pain [*Cooper Dep., Appx. 032; September 8, 2016 Memorial Hospital Final Report, Appx. 036*].

23.     The Memorial Medical Center records show the following history taken from Cooper:

> "The patient presents with back pain and had severe back pain 20 years ago that resolved after steroid injections.  He had severe back pain 2 years that also resolved.  This back pain started yesterday while driving a semi truck over bumpy country roads. Feels similar, no new injury." [*September 8, 2016 Memorial Hospital Final Report, Appx. 036; Cooper Dep., Appx. 030*].

24.     The doctor reported the following "Impression: low back pain" [*September 8, 2016 Memorial Hospital Final Report, Appx. 040*].

25.     Plaintiff was discharged to home with his condition improved [*September 8, 2016 Memorial Hospital Final Report, Appx. 040*].

26.     Cooper was prescribed medications and advised to follow up with Anshul Padney within 1-2 days for worsening/continued problem [*September 8, 2016 Memorial Hospital Final Report, Appx. 040*].

27.     The Memorial Medical Center records for September 8, 2016 make no statement that Cooper was not able to perform the functions of his job [*September 8, 2016 Memorial Hospital Final Report, Appx. 036-041*].

28.     Cooper called Mick Butler on September 8, 2016 and told him his back was bothering him and he would not be coming to work [*Butler Dep. at 31*].

29.     Cooper did not tell Butler how long he was going to be out and Cooper said he did not know [*Butler Dep., Appx. 010*].

30.     Butler asked Cooper if he had injured his back and Cooper replied not that he was aware of [*Butler Dep., Appx. 010*].

31.     Butler told Cooper he would need a doctor's excuse stating he could come to work without restrictions [*Butler Dep., Appx. 010*].

32.     The notice Plaintiff provided on September 8, 2016 that he was not coming in to work was not in compliance with Beelman's call-in procedures [*Butler Dep., Appx. 010; Handbook, Appx. 005*].

33.     Cooper was off work from September 8, 2016 through September 14, 2015 [*Cooper Dep., Appx. 030*].

34.     Cooper did not seek further treatment for his back pain until he followed up with Dr. Aksura Verma on September 12, 2016 [*Dr. Verma Records, Appx. 042*].

35.     Dr. Verma diagnosed Plaintiff as having lumbar back pain [*Dr. Verma Records, Appx. 045*].

36.     Dr, Verma prescribed a muscle relaxer and pain medication as needed [*Dr. Verma Records, Appx. 045*].

37.     On September 12, 2016, Dr. Verma provided Plaintiff with a doctor's note which simply stated "Mr. Cooper may return to full duties at work as of 9/15/2016" [*Dr. Verma Return to Work Letter, Appx. 046*].

38.     Dr, Verma's September 12, 2016 letter does not state the reason(s) why Cooper should be off work, that Cooper was unable to perform the functions of his job while off work, the date his problems began, and what treatment if any she was providing Cooper [*Dr. Verma Return to Work Letter, Appx. 046*].

39.     Plaintiff was then off work until he returned on September 15, 2016.  [*Cooper Dep., Appx. 035*].

40.     Plaintiff did not experience any additional back flare ups between September 15, 2016 and October 5, 2016, the date of his termination. [*Cooper Dep., Appx. 035*].

41.     On September 28, 2016, Plaintiff's dispatcher, Pat Sadler, asked for volunteers to work over the weekend of October 1-2, 2016. Plaintiff said he could not work because he would be out of town. [*Cooper Dep., Appx. 031*].

42.     On October 3-4, 2016, Plaintiff missed work because of the flu. [*Cooper Dep., Appx. 032*].

43.     On October 3, 2016, Plaintiff e-mailed dispatcher Pat Sadler at 9:11 a.m. to inform her he would not make it in because he was sick [*E-Mails, Appx. 048*].

44.     Sadler responded by asking Plaintiff to come back with a doctor's note before returning to work [*E-Mails, Appx. 047*].

45.     Plaintiff told Sadler he was "a grown man and I had the flu, I knew how to take care of myself." [*Cooper Dep., Appx. 032-033*].

46.     Plaintiff refused to provide a doctor's note [*Cooper Dep., Appx. 034*; *E-Mails, Appx. 047*].

47.     On October 4, 2016, Plaintiff did not inform Sadler that he would not be at work due to illness [*Sadler Dep., Appx. 050*].

48.     If Plaintiff contacted Butler to tell him he was not coming in on October 4, 2016, he would have given this notice around 7:00 a.m. [*Cooper Dep., Appx. 033*].

49.     Plaintiff normally began his work day at 3:30 am [*Cooper Dep., Appx. 033*].

50.     Plaintiff returned to work on the morning of October 5, 2016, and he was told by Butler he was terminated due to his attendance record and not turning in a doctor's note. [*Cooper Dep., Appx. 034; Butler Dep., Appx. 011*].

51.     At the relevant times, Plaintiff's work schedule started at around 3:30 am [*Cooper Dep., Appx. 033*].

52.     The Handbook sets forth the Call-In Procedure and Absenteeism Policy, to wit:

> "If you are unable to work because of sickness or injury, you must call in and inform your dispatch or terminal manager at least **three (3) hours** prior to your scheduled departure time. You must give reason for your absence at this time.

> If you are going to be late for work, you must contact your dispatch or terminal manager as soon as possible and inform them of why you will be late. The dispatcher or terminal manager will take the necessary measures to handle the situation at that time.

> As a driver, your presence on time is vitally important. Excessive and/or unexplained absences, tardiness, or failure to follow the

call-in procedure will result in disciplinary action and could jeopardize your future with the company.

Repetitive or habitual absenteeism or tardiness will not be tolerated and will subject the employee to disciplinary action.

Any absence over one consecutive working day will require a doctor's note. The note must be given to your dispatcher or terminal manger. This note should detail the reason as to why you have been off work.

Any employee who fails to call-in within 24 hours will be considered AWOL. Anyone who reaches AWOL status will be suspended without pay pending termination to investigate the reasons why he/she did not call in." [*Handbook, Appx. 005*].

53.     The Company Standards for Beelman in the Handbook state:

Disciplinary action, ranging from counseling to discharge, depending on the seriousness of the offense, will be taken for violations of the following company rules:

*****

*Repetitive or habitual absenteeism and lateness. An employee who is unable to report to work must inform his/her dispatch, supervisor, or terminal manager. **Notice must be given a minimum of three hours prior to scheduled departure time."** **[Bold in original].**

*****

*Failing to obey instructions of authorized personnel.

*****

*Ignoring or violating safety rules or common sense safety practices.

[*Handbook, Appx. 003-004*].

54.     The Handbook also contains a FMLA policy, which reads in pertinent part:

Except where leave is not foreseeable, all employees requesting FMLA leave must submit the request in writing to their terminal manager. The Vice President of Operations of the Company must approve all leaves.

When an employee plans to take FMLA leave, the employee must give the Company thirty (30) days' notice. ***If it is not possible to give (30) days' notice, the employee must give as much notice as is practicable.*** An employee undergoing planned medical treatment is required to make a reasonable effort to schedule the treatment to minimize disruptions to the Company's operations.

***In the event the leave is not foreseeable, notice must be given to the employee's manager or to the Vice President of Operations, within forty-eight (48) hours of the time when the employee determines that a request for leave was made.***

Employees requesting leave for his/her own serious health condition or the serious health condition of a family member will be required to provide certification of the need for the leave before the request will be approved. When an employee has taken FMLA leave for his/her own serious health condition, a doctor's release authorizing the return to work must be provided before the employee will be permitted to return to work (Emphasis added).

[*Handbook, Appx. 006-007*].

55.    The Handbook further states: "Employees on FMLA leave must use all of their unused vacation and any other accrued paid time off before beginning unpaid leave [*Handbook, Appx. 006*].

56.    Plaintiff never applied for leave under the FMLA or spoke with anyone at Beelman regarding FMLA leave. [*Cooper Dep., Appx. 024*].

## **STANDARD OF REVIEW**

Under Rule 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a

motion for summary judgment, the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for a trial. If Beelman meets its burden in showing either: (1) Plaintiff did not have a qualifying "serious health condition" under the FMLA; (2) Plaintiff did not provide sufficient notice to Beelman as required under its policy; or (3) Beelman did not deny Plaintiff any FMLA benefits to which he was entitled because Beelman would have terminated him regardless of any FMLA leave, then Plaintiff must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Caskey v. Colgate Palmolive Co., I535 F.3d 585, 589 (7th Cir. 2008). In determining and evaluating a motion for summary judgment, a mere scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248.

## **ARGUMENT**

Plaintiff Mark Cooper brings this action under the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* (FMLA).  The FMLA entitles an eligible employee to 12 weeks of leave during any 12 month period for a serious health condition that makes the employee unable to perform the functions of his position at work.  29 U.S.C. §2615(a)(1)(D); Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006).  This is sometimes referred to as the "self care" provision. The FMLA makes it unlawful for an employer to interfere with the exercise of any right under

the FMLA or for retaliating against an employee for exercising his rights under FMLA.  29 U.S.C. §2615(a)(1),(2); <u>Burnett v. LFW, Inc.,</u> 472 F.3d 471, 477 (7th Cir. 2006).

Plaintiff claims he was entitled to FMLA leave (1) for the time he was off work from September 8, 2016 to September 15, 2016 due to a serious health condition, (2) that Beelman interfered with Plaintiff's FMLA rights by failing to notify him that he might be entitled to receive FMLA leave, (3) that Beelman interfered with Plaintiff's FMLA rights by failing to investigate whether he was entitled to receive FMLA leave once Beelman had received notice of his serious health condition and failed to designate his absences for the serious health condition as FMLA leave, and (4) Beelman interfered with Plaintiff's FMLA rights by terminating him based on absences that should have been designated FMLA protected leave [Doc. 9, ¶¶30-32].

Defendant Beelman denies that Plaintiff had a serious medical condition in that Plaintiff did not have an injury, impairment or medical condition that involved inpatient care or continuing treatment for more than three consecutive days.  Defendant further denies that Plaintiff gave proper notice to Beelman in that Plaintiff did not provide sufficient information for Beelman to reasonably determine whether the FMLA might apply and that Plaintiff was making a request for FMLA leave.  Plaintiff did not provide Plaintiff with information that he was unable to perform his job function.  Further, Plaintiff did not follow Beelman's FMLA procedure of providing 48 hours notice of the time when the employee determines that the request for leave was needed.  Plaintiff was not denied FMLA leave in that Beelman's policies and procedures require that Plaintiff use all of his unused vacation or other accrued time off before beginning unpaid FMLA leave.  Plaintiff still had unused vacation and sick day available to him.  Finally, Beelman did not terminate Plaintiff because he tried to exercise his FMLA rights.  Rather,

Plaintiff was absent from work for two days for the flu and refused to provide a doctor's excuse for his absence.

### A.   FMLA INTERFERENCE CLAIM

When an employee alleges an employer interfered with his rights under the FMLA, he must establish: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him the FMLA benefits to which he was entitled. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 635 (7th Cir. 2009). Plaintiff is unable to meet elements three through five.

### 1.   Plaintiff was not entitled to take leave.

To be entitled to FMLA protections, Plaintiff must prove he suffered from a "serious health condition," which rendered him incapable of performing his job functions. 29 C.F.R. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4). The FMLA defines "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves: (a) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Plaintiff did not receive inpatient care. Therefore, if he had a "serious health condition," it must come under the "continuing treatment by a health care provider" prong of 29 U.S.C. § 2611(11)(B).  Whether an employee suffers from a serious medical condition is a question of law for the court to determine.  Haefling v. United Parcel Service, Inc., 168 F.3d 494, 499 (7th Cir. 1999).

To fall under the "continuing treatment" prong, there must be period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) treatment two or more times,

within 30 days of the first day of incapacity by a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or (2) treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.   29 C.F.R. § 825.115(a)(2)(I), (iii).

The FMLA regulations define "incapacity" as "inability to work…or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.113(b). The incapacity requirement does not mean that the employee is free to make their own judgment as to whether they should work, or if it is too uncomfortable or inconvenient. Olsen v. Ohio Edison Co., 979 F.Supp. 1159, 1166 (N.D. Ohio 1997). Rather, the judgment as to whether an employee is incapacitated is based on a determination by a health care provider that the "employee *cannot* work (or could not have worked) *because of* the illness." Id. (emphasis in original) (citing Seidle v. Provident Mut. Life Ins. Co., 871 F.Supp. 238, 244 (E.D. Penn. 1994).  A statement from the health care provider that the employee should be excused from work is not the same thing as saying an employee cannot perform the function of his job.  Ryder v. Shell Oil Co., 131 F. Supp.2d 635, 642 (S.D. Texas 2015).

Here, when Plaintiff went to the emergency room on September 8, 2016 he was discharged with a diagnosis of back pain, given a one week supply of an anti-inflammatory medication and told to follow-up within 1-2 days if his symptoms either worsened. The medical records do not reflect that Plaintiff was unable to perform the functions of his job or that he should remain off work. Therefore, it cannot be said that Plaintiff had a serious health condition or was "incapacitated" at the time he saw the ER doctor on September 8, 2016.  Further, there

was not a doctor's note stating that Plaintiff should be off work from September 8 to September 12 because Plaintiff had a serious health condition and was unable to perform his job functions during this period. Instead, Plaintiff made his own choice to stay off work.

Further, there is no record of Plaintiff as having a qualifying period of incapacity. There is no evidence that Plaintiff was incapacitated for more than three days.  *See,* Seidle v. Provident Mut. Life Ins. Co., 871 F.Supp. 238, 243-244 (E.D. Penn. 1994); Bond v. Abbott Laboratories, 7 F. Supp.2d 967, 973 (N.D. Ohio 1998); Woodman v. Meisel Sysco Food Service Co., 657 N.W.2d 122, 139 (Mich. App. 2002).  There is no doctor's excuse or note stating Plaintiff should be off work from September 8 to September 12 because of a serious health condition of at least four days.  Plaintiff saw Dr. Verma on September 12 and on that date Dr. Verma wrote a letter to Beelman stating that Plaintiff could return to work on September 15.  While Dr. Verma did not state a reason why Plaintiff should be off work, she only stated he should be off work for three days – September 12 to September 14.  Plaintiff returned to work on September 15.  The incapacity rule requires that Plaintiff be off work for more than three days.

Additionally, Plaintiff's back flare ups appear to be nothing more than occasional bouts of pain associated with a past injury that would settle down after a couple of days. Beelman does not believe that this condition was the type of condition Congress had in mind when it drafted the FMLA. It was not intended for minor ailments and injuries, reserving protections only to those with "serious health conditions." The Senate Report of the FMLA states: "[T]he term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days…" S.Rep. No. 103-3, at 28,

reprinted in 1993 U.S.C.C.A.N. 3, 30 (1993). See also 29 C.F.R. § 825.113(d) ("Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave."). The Senate Report also states that "back conditions" may satisfy this test if they "requir[e] *extensive* therapy or surgical procedures." S.Rep. No. 103-3, at 29 (emphasis added).

Here, Plaintiff testified that since his initial back injury, he occasionally experienced flare ups with his back, during which time Plaintiff would take a couple days off of work to rest. Plaintiff has not had any surgery performed to his back. When Plaintiff went to the emergency room on September 8, 2016 he was discharged with a diagnosis of back pain, given a one week supply of an anti-inflammatories, and told to follow-up if his symptoms either worsened or continued. Even when he followed up on September 12, he was diagnosed with low back pain, given a prescription, and told to follow up. According to Plaintiff's medical records, he never followed up with Dr. Verma.

There is no genuine issue of material fact that Plaintiff did not have a qualifying serious medical injury under the FMLA and Beelman is entitled to judgment as a matter of law.

**2. Plaintiff did not provide notice to Beelman**.

In order to present a *prima facie* case of FMLA interference, one must show they provided sufficient notice to their employer of an intent to take leave. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 635 (7th Cir. 2009). An employee must alert his employer to the seriousness of the health condition when requesting FMLA leave. Stevenson v. Hyre Electric Co., 505 F.3d 720, 725 (7th Cir. 2007). Merely contacting the employer about illness related absences does not

adequately communicate the seriousness of the medical condition.  Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311-312 (7th Cir, 2006).  The notice obligation is satisfied if the employee provides information indicating he likely has a FMLA qualifying condition.  Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006).

"An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice."  29 C.F.R. §825.301(b); Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311 (7th Cir, 2006). However, the employee must still state a qualifying reason for the needed leave.  Id. "An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied."  Id.  Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311-312 (7th Cir, 2006).

In this case, Plaintiff called Mick Butler on September 8, 2016 and said he wasn't coming to work because his back was bothering him.  Plaintiff did not state he couldn't come to work because he was unable to perform the functions of his job duties.  Plaintiff did not say how long he was going to stay off work and did not indicate it was going to be more than three days. Plaintiff did not tell Butler he was under the continuing care of a health care provider or that he was supposed to receive any follow up care.  He did not mention that he had been prescribed a regimen of medication.  Plaintiff did not provide sufficient information to allow Beelman the ability to determine whether Plaintiff qualified for leave.  *See generally,* Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311-312 (7th Cir, 2006).

On September 8, 2016, Mick Butler told Plaintiff he would need a doctor's excuse for his absence, including a statement that Plaintiff could return to work without restrictions.  Plaintiff

saw Dr. Verma on September 12, 2016 for his back pain. Dr. Verma wrote a letter on Plaintiff's behalf that simply stated that Plaintiff could return to full duties at work on September 15, 2016. There is no statement in Dr. Verma's letter as to why he was treating Plaintiff. There is no statement that Plaintiff was incapacitated or that he could not perform the functions of his job duties. *See,* Ryder v. Shell Oil Co., 131 F. Supp.2d 635, 642 (S.D. Texas 2015). There is no statement that Plaintiff was incapacitated for any period of time. There is no statement in the letter that Plaintiff was under continuing treatment with Dr. Verma for his back pain or that Dr. Verma was treating Plaintiff with a medication regimen. In fact, Dr. Verma prescribed muscle relaxers and pain medication on an as needed basis, which hardly qualifies as a continuing treatment regimen. Dr. Verma's letter does not trigger any duty on the part of Beelman to make further inquiry. Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 311-312 (7th Cir, 2006).

Even if Plaintiff's notice was adequate, Beelman's Handbook contains policies regarding employee notice to take FMLA leave. An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent of unusual circumstances. 29 C.F.R. § 825.302(d). Absent unusual circumstances, an employee's failure to comply with the usual notice requirements can result in FMLA-protected leave being delayed or denied. 29 C.F.R. § 825.302(d).

In the case of Srouder v. Dana Light Axle Mfg., LLC, 725 F.3d 608 (6th Cir. 2013), plaintiff claimed FMLA interference against his employer after the employer terminated the plaintiff's employment due to his failure to follow the call-in requirements of the attendance policy. Id. at 609. Plaintiff developed a hernia that required surgery. Id. Plaintiff did not comply with the call-in attendance policy. Id. at 613. Plaintiff did not comply because he did not think he needed to because there was a meeting where plaintiff informed the employer he was not coming

in to work and it was known he was having surgery. Id. The Srouder court affirmed summary judgment in favor of the employer in these circumstances based on 29 C.F.R. § 825.302(d). In so holding, the court found that plaintiff showed no evidence of unusual circumstances or that the employer waived its call-in policy. Id. at 615. The court also held, regardless of whether plaintiff provided sufficient FMLA notice to the employer at their meeting, the employer was nevertheless justified in terminating plaintiff's employment for failing to follow the call-in policy. Id.

A similar result is required here. Plaintiff never applied for leave under the FMLA or spoke with anyone at Beelman regarding FMLA leave. Plaintiff has no evidence that there were unusual circumstances justifying his failure to comply with Beelman's requirements. All the Handbook required was for Plaintiff to contact his manager or the Vice President of Operations that he needed FMLA leave. Plaintiff acknowledged he was provided with a copy of the policy. Plaintiff has no evidence Beelman has waived these requirements. Therefore, summary judgment should be granted due to Plaintiff's failure to provide sufficient notice as required under Beelman's Handbook.

## B.    BEELMAN DID NOT DENY PLAINTIFF ANY FMLA PROTECTION OR RETALIATE AGAINST PLAINTIFF.

The final element Plaintiff must meet to make a claim of FMLA interference is his employer denied him the FMLA benefits to which he was entitled. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 635 (7th Cir. 2009). When an employee alleges an employer interfered with their substantive rights under the FMLA, it's required that he establish by a preponderance of the evidence he is entitled to the benefit claimed. Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 804 (7th Cir. 2001). An employee is not entitled to any right, benefit, or position of

employment other than that to which he would have been entitled had the employee not taken the leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a).

The Beelman Handbook states: "Employees on FMLA leave must use all of their unused vacation and any other accrued paid time off before beginning unpaid leave."  An employer may require an employee to substitute any accrued paid vacation leave, personal leave or sick leave for leave provided under FMLA. 29 U.S.C. §2612(d)(2)(A).  The FMLA was not intended to be a substitute for valid sick leave and vacation policies.  Plaintiff cannot pocket paid vacation leave, sick leave or accrued paid leave and request FMLA leave be used in its place.  Thus, before Plaintiff is entitled to use FMLA leave, he must exhaust his unused vacation time or other accrued time off.  Plaintiff did not exhaust this paid leave under the Beelman policy and cannot be heard that any FMLA right was interfered with by Beelman.  Plaintiff has not shown that any paid leave was exhausted or that he was entitled to FMLA absent exhaustion of such paid leave.

In addition to there being no evidence that Plaintiff interfered with Plaintiff's FMLA rights, there is no evidence that Plaintiff was terminated for asserting his FMLA rights.  The employer may present evidence to show it would have discharged the employee even if he had not been on FMLA leave. Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 805 (7th Cir. 2001). An employer may terminate an employee for poor performance when he would have been terminated even absent his leave. Id.; see also Clay v. City of Chicago Dep't of Health, 143 F.3d 1092, 1094 (7th Cir. 1998).

First, Plaintiff habitually failed to comply with Beelman's call-in procedure and absenteeism policy throughout September and October 2016.  According to the Handbook, if one is unable to work because of sickness or injury, the employee must call in and inform dispatch or the terminal manager at least three (3) hours prior to the driver's scheduled departure time. The

Handbook prescribes any absence over one consecutive working day will require a doctor's note for the employee to provide his manager or dispatcher.  At the relevant times, Plaintiff's work schedule started at around 3:30 a.m. Therefore, by the time Plaintiff notified Beelman he was not coming in to work on September 8, 2016, he did so in violation of the call-in policy. On September 28, 2016, Plaintiff's dispatcher, Pat Sadler, asked for volunteers to work over the weekend of October 1-2, 2016, but Plaintiff said he could not work because he would be out of town.  On Monday, October 3, 2016, Plaintiff e-mailed Sadler at 9:11 a.m., nearly six hours after his scheduled start time, to inform her he did not make it in because he was sick.  Sadler responded by asking Plaintiff to come back with a doctor's note before returning to work. Plaintiff told Sadler he was a grown man and he had the flu, he knew how to take care of himself, and he refused to provide a doctor's note. When Plaintiff was terminated, the reasons cited were his habitual absenteeism and his refusal to provide a doctor's note.

On October 4, 2016, Plaintiff did not inform his dispatcher he would not be at work. Even if he did contact Butler on October 4, Plaintiff admits it would have been around 6:00 or 7:00 a.m.  This, too, was in violations of the call-in procedures.

In Cracco v. Vitran Exp., Inc., 559 F.3d 625, 635-36 (7th Cir. 2009), plaintiff claimed, interference with his rights under the FMLA. The district court granted summary judgment in the employer's favor. Id. at 628. On plaintiff's interference claim, the Seventh Circuit found plaintiff could not establish the element that he was denied a benefit he was entitled to under the FMLA because there was substantial evidence the employer would have made the same decision had the employee not exercised his FMLA rights. Id. at 636. Cracco failed to provide evidence that would lead a reasonable trier of fact to conclude his misfeasance or poor performance did not take place. Id.; see also Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 807 (7th

Cir. 2001)(holding plaintiff failed to present sufficient evidence for trier of fact she would not have been terminated regardless and affirming summary judgment in employer's favor); <u>Estrada v. Cypress Semiconductor (Minnesota) Inc.</u>, 616 F.3d 866, 872 (affirming summary judgment in employer's favor in FMLA interference claim where employer showed adequate grounds for termination where employee's attendance warranted termination regardless of FMLA leave).

Again, a similar result is required here. Plaintiff was not denied any right he potentially had under the FMLA. Both before and after his allegedly protected leave of September 8-15, 2016, Plaintiff had issues with his performance, complying with the call-in procedures, and insubordination in refusing to provide a doctor's note in conformance with the Handbook and a direct request by his dispatcher. The Court's role here is not to be a super-personnel department that reexamines the business decisions made by companies, but to determine whether there has been discrimination. <u>Kohls v. Beverly Enterprises Wisconsin, Inc.</u>, 259 F.3d 799, 805-806 (7th Cir. 2001).  Plaintiff cannot put forth any evidence showing Beelman denied him any benefit to which he was entitled because there were more than adequate grounds for his termination without considering any alleged FMLA-protected leave.

## <u>CONCLUSION</u>

WHEREFORE, for the above reasons, Defendant Beelman Truck Co. respectfully requests this Honorable Court to grant its Motion for Summary Judgment and grant further relief it deems appropriate.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

/s/ Ted L. Perryman
Ted L. Perryman, #02170504
Korissa M. Zickrick, #06285055
Andrew P. Laquet, #6317410
1034 S. Brentwood Blvd, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850/Fax: (314) 421-4346
tperryman@robertsperryman.com
kzickrick@robertsperryman.com
***Attorneys for Beelman Truck Company***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been mailed via U.S. Mail this 13th day of August 2018 to:

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Ste. 300
Chicago, IL 60604
***Attorneys for Plaintiff***

/s/ Ted L. Perryman