IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARK COOPER, | No. 3:17-cv-03102-RM-TSH |
| Plaintiff, | |
| v. | Judge Richard Mills |
| BEELMAN TRUCK CO., | Magistrate Judge Tom Schanzle-Haskins |
| Defendant. | |

**PLAINTIFF MARK COOPER'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mark Cooper ("Cooper"), hereby moves this Court to grant summary judgment in his favor and against Defendant, Beelman Truck Co. ("Beelman" or "Company") as to liability on his claim of interference in violation of the Family Medical Leave Act ("FMLA") pursuant to Fed. R. Civ. P. 56 and L.R. 7.1(D).  Rule 56 requires, and this Motion reflects, that all facts be viewed in a light most favorable to the non-moving party.  There are no genuine issues of material fact as it relates to Cooper's FMLA interference claim and Beelman's liability for the same.

### INTRODUCTION

As described herein, the undisputed evidence shows that Mr. Cooper experienced a period of incapacity for more than three days, which resulted in receiving treatment 2 times within 30 days, as well as being prescribed medication (i.e. a course of continuing treatment).  Consequently, Cooper suffered from a serious health condition, as defined by the FMLA.  Mr. Cooper's manager, Mick Butler ("Butler"), was aware that Mr. Cooper had previously experienced back problems, that he sought and received medical treatment because of his back, that he was unable to work for more than three consecutive calendar, and that he requested the time off from work because of his back and to receive medical treatment for his

back – therefore, Butler received notice of Cooper's probable need for FMLA leave, which triggered Beelman's obligation to investigate. However, Butler did not provide Cooper with any designation, eligibility, or rights and responsibilities notices. Instead, Butler terminated Cooper because of his absences from work, specifically because of his absences on September 8th through the 14th that qualified for FMLA protection. By relying on absences that qualified for FMLA protection in order to take an adverse employment action, Beelman interfered with and violated Mr. Cooper's rights under the FMLA. Therefore, Mr. Cooper is entitled to summary judgment as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Beelman employed Mark Cooper as a truck driver from March 2014 through October 5, 2016. Ex. A, Deposition of Mark Cooper ("Cooper Dep.") at 53:19-25.

2. Beelman has multiple locations. Ex. B, Deposition of Mick Butler ("Butler Dep") at 12:12-18.

3. Cooper worked out of Beelman's Springfield, Illinois location ("Springfield"). Ex. A, Cooper Dep. at 55:12-14; Ex. B, Butler Dep. at 12:9-11.

4. In 2015, approximately 90 employees worked for Beelman out of its Springfield location. Id. at 11:16-25, 12:1-4. After January 1, 2016 through Cooper's termination, Beelman employed approximately 78 drivers in Springfield. Ex. B, Butler Dep. at 12:5-8.

5. At the start of his employment, Cooper was given a copy of Beelman's Employee Handbook, which included the Company's written policies regarding sick leave, FMLA leave, call-out procedures, and progressive discipline. Ex. A, Cooper Dep. at 35:12-22; 36:4-14; Ex. C, Employee Handbook ("Handbook").

2

6. Beelman has a poster describing the FMLA posted in the break room of its Springfield facility. Ex. B, Butler Dep. at 57:18-19.

7. Mick Butler has worked for Beelman Truck Company from 2011 through the present. Id. at 9:14-21. Throughout his employment with Beelman, Butler has held the position of Terminal Manager at Beelman's Springfield location. Id. at 9:22-25, 10:1. Butler had the authority to, and did, hire, fire, and discipline employees. Id. at 2-10.

8. Butler hired Cooper and was Cooper's direct supervisor throughout his employment. Id. at 10:20-24, 11:8-15. Cooper did not have any other boss or supervisor in Springfield. Ex. A, Cooper Dep. at 58:1-3.

9. Throughout 2015 and 2016, Cooper worked approximately 50 hours per week. Ex. B, Butler Dep. at 15:1-25, 16:1-25, 17:1-13.

10. Cooper suffered a herniated disc approximately 15 years before joining Beelman. Ex. D, SIU Medical Records at 1. Cooper continued to have flare-ups of acute back pain intermittently over the years. Ex. A, Cooper Dep. at 100:2-24. Flare-ups of Cooper's back pain would occur suddenly and unpredictably. Id. at 143:7-16.

11. On February 17, 2015, Cooper reinjured his back while at work. Ex. A, Cooper Dep. at 99:20-25, 100:1; Ex. B, Butler Dep. at 24:11-20, 25:11-19; Ex. E, Employee Injury Report. Cooper was absent from work due to his back injury from February 23, 2015 through February 26, 2015 and was treated for his back pain. Ex. B, Butler Dep. at 24:11-20; Ex. F, 2/23/15 SIU Letter; Ex. G, 2/19/15 Mem'l Hosp. Recs.

12. Butler knew that Cooper had injured his back in February of 2015. Ex. B, Butler Dep. at 24:11-20; 25:16-19.

3

13.     Cooper did not work from September 4, 2016 through September 6, 2016 in order to attend a colonoscopy.  Ex. A, Cooper Dep. at 117:20-25; 118:1-13; Ex. H, Driver Attendance Report.

14.     Cooper returned to work on September 7, 2016.  Ex. A, Cooper Dep. at 118:14-21; 126:2-6.

15.     On September 7, 2016, Cooper was hauling a load of pumpkins from Southern Illinois to Morton.  Id. at 74:8-15; 119:17-19.  During his drive, Cooper drove his truck over bumpy roads, which resulted in him experiencing back pain on the evening of September 7, 2016.  Id. at 74:8-21; 85:13-21; 119:17-19; Ex. I, 9/8/16 Mem'l Hosp. Records at 2, 3.

16.     The morning of September 8, 2016, Cooper called his supervisor, Butler, and informed Butler that his back hurt, he could not work, and he was seeking medical attention for his back.  Ex. A, Cooper Dep. at 74:16-21; Ex. B, Butler Dep. at 31:6-25, 36:4-9, 36:20-25, 37:1-13; Ex. H, Driver Attendance Report; Ex. J, Def. 2d Supp. Ansrs. to Interrogatories.

17.     Butler informed Cooper that he needed to bring a doctor's note in order to return to work.  Ex. B, Butler Dep. at 37:14-21; Ex. H, Driver Report; Ex. J, Def. 2d Supp. Ansrs. to Interrogatories.

18.     That same day, September 8, 2016, Cooper went to the Memorial Hospital Emergency Room ("Emergency Room" or "Memorial") due to severe back pain.  Ex. A, Cooper Dep. at 118:22-25; 119:1-7; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 2, 3, 13, 14, 26, 29-31.

19.     Cooper was given a CT scan while at the Emergency Room.  Id at 32-3.  The CT scan showed Cooper had degenerative disc disease of L5-S1.  Ex. D, SIU Recs. at 1; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 33.

4

20. While at the Emergency Room, Cooper was given several medications to treat his acute or chronic back pain, including hydrocodone-acetaminophen, prednisone, and hydromorphone, and an injection of Dilaudid. Ex. A, Cooper Dep. at 86:2-6; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 18-23, 32, 34.

21. The Emergency Room prescribed Cooper several medications to continue taking after his discharge. Ex. I, 9/8/16 Mem'l Hosp. Recs. at 18-23, 34. Cooper was prescribed cyclobenzaprine (Flexeril 10 mg) and instructed to take this medication from September 8, 2016 through September 11, 2016. Id. at 21. Cooper was also prescribed hydrocodone-acetaminophen (Norco) and instructed to take this medication from September 8, 2016 through September 11, 2016. Id. at 22. Additionally, Cooper was prescribed prednisone and instructed to take this medication from September 8, 2016 through September 15, 2016. Id. at 23.

22. The prescription orders given to Cooper for the hydrocodone-acetaminophen stated "DO NOT OPERATE MACHINERY OR DRIVE." Id. at 22, 34.

23. Cooper took the medications as prescribed. Ex. K, Affidavit of Mark Cooper ("Cooper Aff.") at ¶ 8.

24. When discharged, Emergency Room instructed Cooper to follow up with a physician. Ex. A, Cooper Dep. at 86:2-6; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 34.

25. On September 12, 2016, Cooper saw his physician, Dr. Akshra Verma at SIU School of Medicine as a follow up to his hospital visit and for further treatment of his back pain. Ex. D, SIU Recs. at 1; Ex. K, Cooper Aff. at ¶ 9.

26. Cooper had continued to experience back pain since his visit to the Emergency Room on September 8 and despite taking his prescribed medications. Ex. D, SIU Recs. at 1; Ex. K, Cooper Aff. at ¶¶ 5-8.

27. From September 8, 2016 through September 14, 2016, Cooper's back pain made it nearly impossible for him to drive. Ex. K, Cooper Aff. at ¶ 5. He struggled to get out of bed without help, had trouble bending over, and had difficulty getting dressed. Id. at ¶ 6, 7.

28. Dr. Verma gave Cooper prescriptions for cyclobenzaprine HCl (Flexeril) and hydrocodone-acetaminophen (Norco) to take for his back pain. Ex. D, SIU Recs. at 4. Cooper took the medications as prescribed by Dr. Verma. Ex. K, Cooper Aff. at ¶ 9.

29. Cooper was also still taking the prednisone prescribed to him at the Emergency Room and continued to take it for 7 days, as prescribed. Ex. D, SIU Recs. at 4; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 18-23, 34; Ex. K, Cooper Aff. at ¶ 8.

30. Dr. Verma also gave Cooper a note stating that he could return to full duties at work as of September 15, 2016 ("doctor's note"). Ex. L, 9/12/16 SIU Letter.

31. Cooper gave Butler his doctor's note. Ex. B, Butler Dep. at 37:12-21; 39:23-25; 40:1-9; Ex. M, 9/14/16 Email. Butler did not ask Cooper for any additional information. Ex. B, Butler Dep. at 40:10-24.

32. Cooper returned to work on September 15, 2016. Ex. A, Cooper Dep. at 119:24-5; 120:1-2.

33. Cooper was absent from work on October 3 and 4, 2016 because he had the flu. Id. at 123:8-12.

34. On October 5, 2016, when Cooper reported for work, Butler terminated him for absenteeism. Ex. A, Cooper Dep. 123:13-15; Ex. B, Butler Dep. at 43:1-15; Ex. N, Termination Report; Ex. J, Def. 2d Supp. Ansrs.; Ex. O, Sadler Dep. 22:15-20, 23:2-11.

35. Butler terminated Cooper because of his absences from work in September and October of 2016, specifically including September 8th through 14th when Cooper was absent because of his back. Ex. B, Butler Dep. at 43:1-15; Ex. P, 10/3/16 Email.

36. Butler alone decided to terminate Cooper. Ex. B, Butler Dep. at 42:3-8; 49:2-13; Ex. O, Sadler Dep. at 22:12-14. No one else participated in Butler's decision to terminate Cooper. Ex. B, Butler Dep. at 42:3-8; 49:2-13; Ex. O, Sadler Dep. at 22:12-14.

37. Butler never discussed the FMLA with Cooper. Ex. B, Butler Dep. at 57:13-15.

38. Butler did not refer Cooper to Beelman's corporate office so he could apply for FMLA leave. Id. at 59:10-12.

39. Butler never gave Cooper any documents, including application forms, regarding the FMLA. Id. at 57:16-23.

40. Other than the Employee Handbook distributed to him at orientation, no other Beelman representative gave Cooper any documents regarding the FMLA. Ex. A, Cooper Dep. at 35:12-22; 36:4-14; Ex. B, Butler Dep. at 57:23-25; 58:1; Ex. C, Employee Handbook.

41. On May 9, 2017, Cooper returned to SIU because of a flare-up with his back pain due to his degenerative disc disease. Ex. Q, 5/9/17 SIU Recs. at 1. The physician at SIU again evaluated and treated Cooper for the chronic back pain he suffered due to his degenerative disc disease of L5-S1. Id. The physician prescribed Cooper Cyclobenzaprine HCI (Flexeril), Hydrocodone-Acetaminophen (Norco), and Gabapentin for his back pain. Id. at 1-5.

42. Beelman is a Delaware Corporation that does business in Illinois providing dry bulk commodity transportation services (i.e. commercial trucking) with facilities throughout the Midwest. Ex. R, Def. Ansr., D.E. 10 at ¶ 7.

**LEGAL STANDARD**

A party is entitled to summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (*citing* Fed. R. Civ. P. 56(a)). The substantive law determines which facts are material. *Id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't.*, 755 F.3d 594, 599 (7th Cir. 2014). "The mere existence of a scintilla of evidence" in support of the Defendant's position is insufficient to withstand summary judgment. *Segura v. TLC Learning Ctr.*, No. 12 C 7020, 2015 WL 93910, at *2 (N.D. Ill. Jan. 6, 2015) (*quoting Anderson*, 477 U.S. at 252).

**ARGUMENT**

FMLA interference claims are materially different than typical employment-law claims in that, in order to prevail, an employee simply must show that his employer deprived him of a substantive right under the Act – no showing of ill intent is necessary. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Specifically, the employee need only establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. *Id.* Here, the undisputed facts show that (1) Cooper was eligible for the FMLA protections, (2) Beelman was covered by the FMLA, (3) Cooper was entitled to leave under the FMLA for his absence from work during September 8 through 14, 2016, (4) Cooper provided sufficient notice of his need for leave to his employer, and (5) Defendant failed to designate his leave as FMLA-protected and,

8

instead, terminated him because of his medical leave absences. Consequently, Mr. Cooper is entitled to summary judgment.

I.     **PLAINTIFF WAS ELIGIBLE FOR FMLA PROTECTION.**

The FMLA applies to employers "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4); 29 C.F.R. § 825.104(a). Cooper worked out of Beelman's Springfield location. Ex. A at 55:12-14. In the 12 months preceding Cooper's need for leave and termination, Beelman employed between 78 to 90 employees in their Springfield location alone. Ex. B at 11:16-25, 12:1-8. Beelman is a Delaware Corporation that does business in Illinois providing dry bulk commodity transportation services (i.e. commercial trucking) with facilities throughout the Midwest. Ex. R, D.E. 10 at ¶ 7. As such, Beelman is a covered employer. *See* 29 U.S.C. § 2611(1), (4); 29 U.S.C. § 142(3); 29 U.S.C. § 152(6), (7).

As a full time employee of the Defendant, Cooper was eligible to receive the protections and benefits of the FMLA. Under the FMLA, an employee is entitled to protection when he has been employed for at least 12 months and worked for at least 1,250 hours of service in the preceding 12 months. 29 U.S.C. § 2611(2)(A). By September 8, 2016, Beelman had employed Cooper for approximately 30 months. Ex. A at 53:19-25. In the 12 months preceding his need for leave, Cooper worked approximately 50 hours per week, i.e. Plaintiff worked approximately 2,600 hours over 12 months. Ex. B at 15:1-25, 16:1-25, 17:1-13. Therefore, Cooper was an eligible employee under the FMLA. *See also* Ex. R, D.E. 10 at ¶ 6.

9

## II.    PLAINTIFF SUFFERED FROM A SERIOUS HEALTH CONDITION.

"Whether a plaintiff's illness constitutes a serious health condition is a question of law to be determined by the court." *Rivero v. United Airlines, Inc.*, No. 04 C 6514, 2005 WL 3159244, at *12 (N.D. Ill. Nov. 22, 2005). For purposes of the FMLA, a serious health condition involving continuing treatment by a health care provider includes: a period of incapacity of more than three, consecutive calendar days that also involves (1) treatment two or more times, within 30 days of the first day of incapacity by a health care provider; <u>or</u> (2) treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of a health care provider. 29 U.S.C. § 2611(11); 29 CFR 825.115(a). "Incapacity" means the inability to work or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom. 29 CFR 825.113(b). Cooper's back pain and related degenerative disc disease constituted a serious health condition under either inquiry.

Cooper was incapacitated from September 8 through September 14, which is a period of incapacity lasting longer than three consecutive days. <u>See Exs. D, H, I, K, L</u>. Memorial Hospital prescribed Cooper hydrocodone-acetaminophen. <u>Ex. I</u> at 22, 34. The discharge instructions with this prescription expressly prohibited Cooper from driving. <u>Id</u>. As a truck driver, driving was an essential function of Cooper's job. *See* 29 CFR 825.123(a) ("An employee is 'unable to perform the functions of the position' where ... the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position…"); *see also Pagel v. TIN Inc.*, 695 F.3d 622, 628 (7th Cir. 2012) (finding account manager employee was unable to perform essential functions where he could not visit customers); *Ransdell v. Heritage Enterprises, Inc.*, No. 04-1209, 2006 WL 3322086, at *4 (C.D. Ill. Nov. 14, 2006) (noting that

10

the FMLA grants leave to eligible employees with a serious health condition that leaves the employee unable to perform his job duties). Cooper struggled to drive, get out of bed, bend over, or dress himself due to the pain he experienced. See Ex. A at 85: 19-21; Ex. K at ¶¶ 6, 7. Cooper's first full day of incapacity was September 8, 2016. Id. That same day he received treatment from the Memorial Hospital Emergency Room. See Ex. I. Four days later, on September 12, 2016, Cooper again received treatment from his physician at SIU. See Ex. D. As such, Cooper had a serious health condition as defined by 29 CFR 825.115(a)(1) because he received treatment from a health care provider two times within 30 days of his first day of incapacity.

Cooper's back pain also meets the criteria of a serious health condition as defined by 29 CFR 825.115(a)(2). Cooper received treatment for his back pain from health care providers on two occasions in September 2016. See Exs. A, D, I, K. In addition, he also received continuing treatment in the form of medications. See Exs. A at 86:2-6; D at 4; I at 18-23, 34; K at ¶¶ 8-9. A course of prescription medicine constitutes a regimen of continuing treatment under the FMLA. *Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1329 (M.D. Ala. 2002). The Emergency Room prescribed Cooper three medications to take for several days following his hospital visit. See Exs. A at 86:2-6; D, 127; I at 18-23, 34; K at ¶¶ 8-9. Cooper then went to SIU for further evaluation, where his physician prescribed him an additional course of medications. Id. The combination of Cooper's treatment at the Emergency Room and SIU, as well as two courses of prescription medications, show that he suffered from a serious health condition.

 A. Cooper Suffered From a Chronic Condition.

In addition, Cooper's back pain and degenerative disc disease is a chronic condition under the FMLA. A chronic health condition is defined as one which (1) requires periodic visits

11

for treatment by a health care provider (defined as at least twice a year); (2) continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) may cause episodic rather than a continuing period of incapacity. 29 C.F.R. § 825.115(c). Treatment for a chronic condition includes a course of prescription medicine to resolve or alleviate the underlying condition. *See Harrell v. Jacobs Field Servs. N. Am., Inc.*, No. 09-CV-02320, 2011 WL 3044863, at *5 (C.D. Ill. July 25, 2011) (finding plaintiff received treatment for chronic allergy condition where physician gave plaintiff an injection and prescription for Claritin D). Cooper testified – and the medical records reflect – that he suffered from recurring bouts of acute back pain for nearly 20 years. See Exs. A at 100:2-24, 143:7-16; D; I; K; Q. In September 2016, Cooper was ultimately diagnosed with degenerative disc disease, which caused him chronic back pain. See Exs. D, I, Q. The same month, Cooper visited two health care providers to treat his back pain. See Exs. A at 74:16-21, 86:2-6, 118:22-25; 119:1-7; D; I; K. Memorial gave Cooper a shot of Dilaudid to treat his back pain, and then prescribed him three medications. See Exs. A at 86:2-6; I at 18-23, 32, 34; K at ¶ 8. SIU gave Cooper new prescriptions to continue the course of medications. See Exs. D at 1, 4; K at ¶ 9. In May of 2017, a health care provider treated Cooper's back pain for the third time within less than twelve months. See Ex. Q. During that visit, SIU again prescribed him medication. Id. This demonstrates that Cooper received treatment for his back pain through three visits to health care providers within a year, and during two documented episodes of incapacity within that same one-year period. Therefore, Cooper suffered from a chronic condition that entitled him to FMLA protections.

**III.    COOPER GAVE SUFFICIENT NOTICE OF HIS NEED FOR LEAVE.**

"[I]t is the employee's duty to place the employer on notice by giving the employer 'enough information to establish probable cause, as it were, to believe that [the employee] is

12

entitled to FMLA leave,' which then shifts the burden to the employer to request additional information as needed." *Fralick v. Biaggi's Inc.*, No. 16-CV-1015, 2017 WL 6543862, at *5 (C.D. Ill. Dec. 21, 2017). "[E]mployers ... are entitled to the sort of notice that will inform them ... that the FMLA *may* apply." *Id.* (quoting *Collins v. NTN–Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)). "The notice requirements of the FMLA are not onerous." *Burnett*, 472 F.3d at 478–79. The employee can be "completely ignorant" of the FMLA and still fulfill his obligation to give notice. *Id.* at 479 (*internal citations omitted*). The employee is not required to refer to the FMLA when requesting leave; rather, "[t]he employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Id.* at 478–79. Where the need for leave is unforeseeable, the employee must give notice as soon as practicable and may be given verbally and over the phone. *See Ransdell*, 2006 WL 3322086, at *4–5.

Here, Cooper's need for leave was unforeseeable. His back pain flared up suddenly and unexpectedly on the evening of September 7, 2016. See Ex. A at 74:8-21, 85:13-21, 100:2-24, 119:17-19, 143:7-16; I. at 2,3. He promptly called Defendant on September 8 – i.e. less than a day after the pain arose – and informed the dispatcher and manager that he could not come to work. See Exs. A at 74:16-21; B at 31:6-25, 36:4-9, 36:20-25, 37:1-13; J. Cooper informed his supervisor, Butler, that he could not work because of his back and was seeking medical attention for his back. See Exs. A at 74:16-21; B at 31:6-25, 36:4-9, 36:20-25, 37:1-13; H; J. Cooper's back pain was not scheduled and flared up without warning, thus he informed his employer of his condition and need for leave as soon as practicable.

Cooper also provided Defendant with sufficient information to notify Beelman of his probable need for FMLA leave. *See Fralick*, 2017 WL 6543862, at *5. Butler testified that

13

Defendant's FMLA policy mirrors statutory requirements. Ex. B at 56:5-15. Under Defendant's policy, an employee taking leave for his own serious health condition must provide a doctor's release authorizing him to return to work. Ex. C at DEF0097. The Handbook states that a serious health condition may include any period of incapacity that requires absence from work for more than 3 calendar days that also involves continuing treatment of a health care provider. Id. at DEF0096. Butler knew of the existence of the FMLA and Beelman's policy on the FMLA. Ex. B at 55-57. He knew that Cooper had injured his back in 2015, which required medical treatment and an absence from work. See Exs. B at 24:11-20, 25:11-19; E; F. Butler knew that Cooper was absent from work in September 2016 because of his back and in order to seek medical attention for his back. See Ex. B at 31:6-25, 36:4-9, 36:20-25, 37:1-13; H; J; L. Cooper complied with the FMLA and Defendant's policy by calling and informing his manager (Butler) of his need for leave as soon as he knew he needed it. See Exs. A at 74:16-21; B at 31:6-25, 36:4-9, 36:20-25; C at DEF00096-7. Cooper complied with Defendant's policy, and Butler's request, that he bring a doctor's release authorizing him to return to work on September 15. See Exs. B at 37:14-21; C at DEF00096-7; L; M. Butler reported that Cooper was absent because of his back to Beelman's workmen's compensation department, as Butler was required to do when an employee claims injury. Ex. B at 36:4-9. Thus, Butler knew that Cooper was unable to work because he hurt his back, sought and received medical attention on at least one occasion during his absence (as evidenced by the September 12 doctor's note), had previously injured and received medical treatment for his back, and was absent and unable to work for a period of 7 days. With this information, Cooper satisfied his obligation to notify Defendant that Cooper likely had an FMLA-qualifying condition. *See Harvey v. Waste Mgmt. of Ill., Inc.*, No. 08 CV 6828, 2010 WL 1741742, at *4–5 (N.D. Ill. Apr. 29, 2010) (finding that employee gave

notice of his need for FMLA leave despite not following employer's policies where employee looked ill, left voicemail stating he went to the hospital, and told his supervisor he was sick and unable to work); *DeLuca v. Simmons Mfg. Corp.*, No. 3:07-CV-2143, 2009 WL 1165340, at *6–7 (M.D. Pa. Apr. 29, 2009) (employer received sufficient notice of employee's possible need for FMLA leave where employee called off work by stating she was receiving treatment from a doctor and after she had previously taken medical leave); *Wheeler v. Pioneer Developmental Servs., Inc.*, 349 F. Supp. 2d 158, 169 (D. Mass. 2004) (plaintiff satisfied FMLA notice requirements where employee told her supervisor she had not been feeling well and asked for time off, then provided a note from her physician).

### IV. DEFENDANT DENIED COOPER THE BENEFIT OF FMLA PROTECTIONS.

"An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim 'requires only proof that the employer denied the employee his or her entitlements under the Act.'" *Fralick*, 2017 WL 6543862, at *5 (*internal citations omitted*.) The ways in which an employer may interfere with FMLA benefits are not limited to the denial of leave or reinstatement. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015). "Interference also encompasses "us[ing] the taking of FMLA leave as a negative factor in employment actions." *Id*. quoting 29 CFR 825.220(c); *see also Pagel*, 695 F.3d at 629 (same).

Disciplining and terminating an employee for absences stemming from FMLA-protected leave is a denial of benefits and constitutes interference. *See Murphy v. Brown*, No. 08 C 4520, 2010 WL 1292704 (N.D. Ill. Mar. 29, 2010). The undisputed evidence shows that Butler decided to terminate and did terminate Cooper because of his September 8-14 absences, absences that qualified for FMLA protection. See Exs. B at at 43:1-15; J; N; P. Plaintiff does not argue

that the October 2016 absences qualified for FMLA protection – whether the October absences were protected is irrelevant. Butler's testimony, and the documentary evidence, shows that Cooper was not terminated solely for the unprotected October absences. See id. To the contrary, Butler made clear he terminated Cooper because of the cumulative days Cooper was absent in September and October. See id. By relying on the September 8-14 absences in his decision to terminate Cooper, Butler used FMLA-protected days as a negative factor in taking and employment action, and thus interfered with Cooper's rights. *See also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) ("the FMLA *is* implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons."); *Preddie*, 799 F.3d at 818 (non-renewal of employee's contract by relying upon absences that should have qualified for FMLA protection interferes with employee's rights).

Furthermore, Beelman also violated Cooper's rights and caused him prejudice through its: (1) failure to give Cooper notice of his eligibility for FMLA leave, orally or in writing (29 CFR 825.300(b)); (2) failure to provide Cooper notice of his rights and responsibilities, which must be in writing (29 CFR 825.300(c)(1)); and (3) failure to provide Cooper a designation notice, which must be in writing (29 CFR 825.300(d)(1), (4)). Failure to provide one of these required notices – let alone *any* of them – constitutes an interference with an employee's FMLA rights for which the employer is liable to the employee for losses sustained as a result of the violation. 29 CFR 825.300(e). Butler never discussed the FMLA at all with Cooper, requested additional information, or referred him to other Beelman personnel who could provide him any of the requisite information about the FMLA. See Ex. B at 57:13-25, 58:1, 59:10-12. Consequently, Cooper's leave was never designated as FMLA leave and Beelman did not grant

16

Cooper the benefit of FMLA protection. See Exs. H, N. Instead, Butler terminated Cooper for absenteeism – specifically relying upon absences that should have been protected by the FMLA. Therefore, Beelman's failure to provide Cooper with any of the required FMLA notices also constitutes unlawful interference. *See Salas v. 3M Co.*, No. 08 C 1614, 2009 WL 2704580 at *11 (N.D. Ill. Aug. 25, 2009) (Manning, J) (finding that failure to provide written FMLA notices that resulted in denial of employee's leave entitlement and termination for absenteeism may amount to unlawful interference); *Baier v. Rohr-Mont Motors, Inc.*, No. 12-CV-8234, 2014 WL 6434584 at *5 (N.D. Ill. Nov. 17, 2014) (St. Eve, J.) (finding that employer's failure to provide information required by FMLA to employee may have interfered with employee's rights).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on his claim of interference in violation of the FMLA and schedule a hearing on damages.

Dated: August 13, 2018                                Respectfully submitted,
                                                      MARK COOPER

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.                         By: /s/ Alexis D. Martin
224 S. Michigan Ave., Suite 300                           Attorney for Plaintiff
Chicago, Illinois 60604
Tel. (312) 763-6880

17

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that she caused a copy of the attached document, **Plaintiff Mark Cooper's Motion for Summary Judgment**, to be served upon the party below by electronically filing with the Clerk of the U.S. District Court of the Central District of Illinois on August 13, 2018.

Ted L. Perryman (*tperryman@robertsperryman.com*)
Korissa M. Zickrick (*kzickrick@robertsperryman.com*)
Andrew P. Laquet (*alaquet@robertsperryman.com*)
Roberts Perryman, P.C.
1034 South Brentwood Blvd, Suite 2100
St. Louis, Missouri 63117

                                            By: /s/ Alexis D. Martin
                                            Caffarelli & Associates Ltd.
                                            224 South Michigan Ave., Suite 300
                                            Chicago, Illinois 60604
                                            Tel. (312) 763-6880