E-FILED
Tuesday, 04 September, 2018  04:23:09 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| MARK COOPER, | No. 3:17-cv-03102-RM-TSH |
| Plaintiff, | |
| v. | Judge Richard Mills |
| BEELMAN TRUCK CO., | Magistrate Judge Tom Schanzle-Haskins |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Beelman Truck Co. ("Beelman") and, for its Response to Plaintiff's Motion for Summary Judgment, states Plaintiff' motion fails to show there are no genuine issues of material fact or that Plaintiff is entitled to judgment as a matter of law and, as a result, the court should deny Plaintiff's motion for summary judgment.

**INTRODUCTION**

The Court should deny Plaintiff's Motion for Summary Judgment because Plaintiff has failed to show by uncontroverted material facts (1) that he had a serious health condition that required inpatient care or continuing treatment that prevented him from performing the functions of his job, (2) that he had a chronic serious health condition, (3) that he provided the requisite notice to Beelman of a probable need for FMLA leave, and (4) that Beelman terminated Plaintiff for alleged FMLA protected absences.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS**

A.    **Undisputed Material Facts:**

1.    Beelman employed Mark Cooper as a truck driver from March 2014 through October 5, 2016. Ex. A, Deposition of Mark Cooper ("Cooper Dep.") at 53:19-25.

**RESPONSE:  Admit.**

2. Beelman has multiple locations. Ex. B, Deposition of Mick Butler ("Butler Dep") at 12:12-18.

**RESPONSE:  Admit.**

3. Cooper worked out of Beelman's Springfield, Illinois location ("Springfield"). Ex. A, Cooper Dep. at 55:12-14; Ex. B, Butler Dep. at 12:9-11.

**RESPONSE:  Admit.**

4. In 2015, approximately 90 employees worked for Beelman out of its Springfield location. Id. at 11:16-25, 12:1-4.

**RESPONSE:  Admit.**

After January 1, 2016 through Cooper's termination, Beelman employed approximately 78 drivers in Springfield. Ex. B, Butler Dep. at 12:5-8.

**RESPONSE:  Admit.**

5. At the start of his employment, Cooper was given a copy of Beelman's Employee Handbook, which included [Beelman's] written policies regarding sick leave, FMLA leave, call-out procedures, and progressive discipline. Ex. A, Cooper Dep. at 35:12-22; 36:4-14; Ex. C, Employee Handbook ("Handbook").

**RESPONSE:  Admit.**

6. Beelman has a poster describing the FMLA posted in the break room of its Springfield facility. Ex. B, Butler Dep. at 57:18-19.

**RESPONSE:  Admit.**

7. Mick Butler has worked for Beelman Truck Company from 2011 through the present. Id. at 9:14-21.

**RESPONSE:  Admit.**

Throughout his employment with Beelman, Butler has held the position of Terminal Manager at Beelman's Springfield location. Id. at 9:22-25, 10:1.

**RESPONSE:  Admit.**

8.      Butler hired Cooper and was Cooper's direct supervisor throughout his employment. Ex. B, Butler Dep. at 10:20-24, 11:8-15.

**RESPONSE:  Admit.**

Cooper did not have any other boss or supervisor in Springfield. Ex. A, Cooper Dep. at 58:1-3.

**RESPONSE:  Admit.**

9.      Throughout 2015 and 2016, Cooper worked approximately 50 hours per week. Ex. B, Butler Dep. at 15:1-25, 16:1-25, 17:1-13.

**RESPONSE:  Admit.**

11.      On February 17, 2015, Cooper reinjured his back while at work. Ex. A, Cooper Dep. at 99:20-25, 100:1; Ex. B, Butler Dep. at 24:11-20, 25:11-19; Ex. E, Employee Injury Report.

**RESPONSE:  Admit.**

Cooper was absent from work due to his back injury from February 23, 2015 through February 26, 2015 and was treated for his back pain. Ex. B, Butler Dep. at 24:11-20; Ex. F, 2/23/15 SIU Letter; Ex. G, 2/19/15 Mem'l Hosp. Recs.

**RESPONSE:  Admit.**

13.      Cooper did not work from September 4, 2016 through September 6, 2016 in order to attend a colonoscopy. Ex. A, Cooper Dep. at 117:20-25; 118:1-13; Ex. H, Driver Attendance Report.

**RESPONSE:  Admit.**

14.   Cooper returned to work on September 7, 2016. Ex. A, Cooper Dep. at 118:14-21;
126:2-6.

**RESPONSE:  Admit.**

17.   Butler informed Cooper that he needed to bring a doctor's note in order to return

to work. Ex. B, Butler Dep. at 37:14-21; Ex. H, Driver Attendance Report; Ex. J., Def. 2d Supp.

Ansrs. To Interrogatories.

**RESPONSE:  Admit.**

19.   Cooper was given a CT scan while at the Emergency Room. Ex. I, 9/8/16 Mem'l

Hosp. Records at 32-33.

**RESPONSE:  Admit.**

The CT scan showed Cooper had degenerative disc disease of L5-S1. Ex. D, SIU Recs. at

1; Ex. I, 9/8/16 Mem'l Hosp. Records at 33.

**RESPONSE:  Admit.**

21.   The Emergency Room prescribed Cooper several medications to continue taking

after his discharge. Ex. I, 9/8/16 Mem'l Hosp. Records at 18-23, 34.

**RESPONSE:  Admit.**

Additionally, Cooper was prescribed prednisone and instructed to take this medication

from September 8, 2016 through September 15, 2016. Id. at 23.

**RESPONSE:  Admit.**

25.   On September 12, 2016, Cooper saw his physician, Dr. Akshra Verma at SIU

School of Medicine as a follow up to his hospital visit and for further treatment of his back pain.

Ex. D, SIU Recs. at 1; Ex. K, Cooper Aff. at ¶ 9.

**RESPONSE:  Admit.**

      31.      Cooper gave Butler his doctor's note. <u>Ex. B</u>, <u>Butler Dep.</u> at 37:12-21; 39:23-25;

40:1-9; <u>Ex. M</u>, <u>9/14/16 Email</u>.

**RESPONSE:  Admit.**

      Butler did not ask Cooper for any additional information. <u>Ex. B</u>, <u>Butler Dep.</u> at 40:10-24.

**RESPONSE:  Admit.**

      32.      Cooper returned to work on September 15, 2016. <u>Ex. A</u>, <u>Cooper Dep.</u> at 119:24-5;

120:1-2.

**RESPONSE:  Admit.**

      33.      Cooper was absent from work on October 3 and 4, 2016 because he had the flu.

<u>Id</u>. at 123:8-12.

**RESPONSE:  Defendant cannot admit or deny whether Cooper had the flu but that is why
he said was absent on October 3 and 4, 2016.**

      37.      Butler never discussed the FMLA with Cooper. <u>Ex. B</u>, <u>Butler Dep.</u> at 57:13-15.

**RESPONSE:  Admit.**

      38.      Butler did not refer Cooper to Beelman's corporate office so he could apply for

FMLA leave. <u>Id</u>. at 59:10-12.

**RESPONSE:  Admit.**

      39.      Butler never gave Cooper any documents, including application forms, regarding

the FMLA. <u>Id</u>. at 57:16-23.

**RESPONSE:  Admit.**

**B.**      <u>**Disputed Material Facts**</u>**:**

      10.      Cooper suffered a herniated disc approximately 15 years before joining Beelman.

<u>Ex. D</u>, <u>SIU Medical Records at 1</u>.

**RESPONSE:   There is no objective evidence to support the assertion Cooper had a herniated disc. In fact, all images taken of Cooper's spine failed to show a disc herniation. Those scans identified mild degenerative disc disease at the L5-S1 level. Cooper <u>Ex. G</u>, <u>2/19/15 Mem'l Hosp. Recs</u> at 3-4; Cooper <u>Ex. I</u>, <u>9/8/16 Mem'l Hosp. Records</u> at 14, 34.**

12.     Butler knew that Cooper had injured his back in February of 2015. <u>Ex. B</u>, <u>Butler</u>

<u>Dep.</u> at 24:11-20; 25:16-19.

**RESPONSE:  Denied.  In the portions of Butler's testimony cited by Cooper, Butler merely states that he was aware Cooper had those days in February 2015 off of work, and that Cooper had said it was because of his back. However, Butler did not have any discussions with Cooper about his specific injury. <u>Ex. B</u>, <u>Butler Dep.</u> at 25:4-10. All that Butler knew for certain was that Cooper had taken those days off, and that after he returned to work Butler did not notice a change in Cooper's work performance. <u>Ex. B</u>, <u>Butler Dep.</u> at 24:21-25; 25:1-10.**

15.     During his drive, Cooper drove his truck over bumpy roads, which resulted in him

experiencing back pain on the evening of September 7, 2016. <u>Ex. A</u>, <u>Cooper Dep.</u> at 74:8-21;

85:13-21; 119:17-19; <u>Ex. I</u>, <u>9/8/16 Mem'l Hosp. Records</u> at 2, 3.

**RESPONSE:  Defendants admits that Plaintiff says he began to experience back pain on the evening of September 7, 2016, but denies he injured his back.  Mick Butler asked if he had injured his back and Plaintiff responded not that he was aware of [Plaintiff Ex. B at 31].**

16.     The morning of September 8, 2016, Cooper called his supervisor, Butler, and

informed Butler that his back hurt, he could not work, and he was seeking medical attention for

his back. <u>Ex. A</u>, <u>Cooper Dep.</u> At 74:16-21; <u>Ex. B</u>, <u>Butler Dep.</u> at 31:6-25, 36:4-9, 36:20-25, 37:1-

13; <u>Ex. H</u>, <u>Driver Attendance Report</u>; <u>Ex. J</u>, <u>Def. 2d Supp. Ansrs. To Interrogatories</u>.

**RESPONSE:  Denied.  Cooper did not inform Butler that his back "hurt" or that he could not work. Rather, Cooper told Butler that "his back was bothering him and he wasn't going to be coming to work." <u>Ex. B</u>, <u>Butler Dep.</u> at 31:20-25, 54:10-14.**

18.     That same day, September 8, 2016, Cooper went to the Memorial Hospital

Emergency Room ("Emergency Room" or "Memorial") due to severe back pain. <u>Ex. A</u>, <u>Cooper</u>

<u>Dep.</u> at 118:22-25; 119:1-7; <u>Ex. I</u>, <u>9/8/16 Mem'l Hosp. Records</u> at 2, 3, 13, 14, 26, 29-31.

**RESPONSE:  Admit that Cooper went to the hospital on September 8, 2016 for low back pain.  Deny that the records support the statement that he went to the hospital on September 8 for "severe back pain'.  Rather the hospital records state: "HAD SEVERE BACK PAIN 20 YEARS AGO THAT RESOLVED AFTER STEROID INJECTION."**

20.     While at the Emergency Room, Cooper was given several medications to treat his acute or chronic back pain, including hydrocodone-acetaminophen, prednisone, and hydromorphone, and an injection of Dilaudid. Ex. A, Cooper Dep. at 86:2-6; Ex. I, 9/8/16 Mem'l Hosp. Records at 18-23, 32, 34.

**RESPONSE:     Admit that Cooper was prescribed hydrocodone-acetaminophen, prednisone, hydromorphone, and an injection of Dilaudid.  Denies that the record states for what reason the medications were prescribed.  Further, the records cited to by Plaintiff do not support the statement that his treatment was for acute or chronic back pain.**

21.     Cooper was prescribed cyclobenzaprine (Flexeril 10 mg) and instructed to take this medication from September 8, 2016 through September 11, 2016. Id. at 21.

**RESPONSE:  Denies to the extent Plaintiff is attempting to show treatment for more than three days.  The record cited to by Cooper prescribes three days of Flexeril beginning on September 8 at 11:08 am and ending on September 11 at 11:16 am.  That is three consecutive 24 hour periods or three days, not four days of treatment and, thus, does not qualify as a serious medical condition [Plaintiff Ex. I at 21].**

Cooper was also prescribed hydrocodone-acetaminophen (Norco) and instructed to take this medication from September 8, 2016 through September 11, 2016. Id. at 22.

**RESPONSE:  Denies to the extent Plaintiff is attempting to show treatment for more than three days.  The record cited to by Cooper prescribes three days of Norco beginning on September 8 at 11:08 am and ending on September 11 at 11:16 am.  That is three consecutive 24 hour periods or three days, not four days of treatment and, thus, does not qualify as a serious medical condition [Plaintiff Ex. I at 22].**

22.     The prescription orders given to Cooper for the hydrocodone-acetaminophen stated "DO NOT OPERATE MACHINERY OR DRIVE." Id. at 22, 34.

**RESPONSE:  Admit that is what the prescription order states.  However, as the Court is aware, such warnings appear on many medications, but people are still able to and do operate vehicles and machinery when on such medication.  There is no a statement in the doctor's treatment plan that Cooper is not able to operate machinery or unable to perform**

the functions of his job during the three day period he was to be on the medication.  **Also the court should note that the prescription for Norco and the alleged prohibition against driving was for three consecutive 24 hour periods and does not meet the definition of incapacity or a serious health condition.**

24.     When discharged, Emergency Room instructed Cooper to follow up with a physician. Ex. A, Cooper Dep. at 86:2-6; Ex. I, 9/8/16 Mem'l Hosp. Recs. at 34.

**RESPONSE:  Denied. Cooper was instructed to follow up with a physician if his symptoms continued or worsened. Ex. I, 9/8/16 Mem'l Hosp. Recs. at 34.**

26.     Cooper had continued to experience back pain since his visit to the Emergency Room on September 8 and despite taking his prescribed medications. Ex. D, SIU Recs. at 1; Ex. K, Cooper Aff. at ¶¶ 5-8.

**OBJECTION:  Defendant objects to this statement of fact as being self-serving and not subject to cross examination.   Plaintiff made no such statement in his deposition. Defendant objects to Plaintiff's citation to paragraph's 5-8 of his affidavit in that the fact asserted is not the lone fact contained in paragraphs 5-8 of his Affidavit.**

27.     From September 8, 2016 through September 14, 2016, Cooper's back pain made it nearly impossible for him to drive. Ex. K, Cooper Aff. at ¶ 5.

**OBJECTION:   Defendant objects to this statement of fact as being self-serving and not subject to cross-examination.  Nowhere in Plaintiff's deposition did he state his back pain made it nearly impossible for him to drive from September 8, 2016 to September 14, 2016. He did not make a statement to Mick Butler or Pat Sadler that his back pain made it nearly impossible to drive nor did Plaintiff make a statement that the could not perform the functions of his job [See, additional statement of fact below].  Cooper simply told Mick Butler his back was bothering him [Plaintiff's Ex. B at 28, 31 and 54].**

He struggled to get out of bed without help, had trouble bending over, and had difficulty getting dressed. Ex. K, Cooper Aff. at ¶¶ 6-7.

**RESPONSE:  Defendant objects to this statement of fact as being self-serving and not subject to cross-examination.  Nowhere in his deposition did he state that he struggled to get out of bed without help, had trouble bending over, and had difficulty getting dressed. Cooper did not report or give notice of these problems to Mick Butler or Pat Sadler when he called in [See, additional statement of facts below].   He merely said his back was bothering him.  [Plaintiff's Ex. B at 28, 31 and 54].  Further, the medical records do not reflect or support this statement of fact.  No notes were taken or complaints made that**

Cooper had trouble bending, getting out of bed, getting dressed, or any other activity of daily living.

28.    Dr. Verma gave Cooper prescriptions for cyclobenzaprine HCl (Flexeril) and

hydrocodone-acetaminophen (Norco) to take for his back pain. Ex. D, SIU Recs. at 4.

**RESPONSE:  Admit that Dr. Verma prescribed Flexeril and Norco for Plaintiff's back pain "as needed".  Defendant denies that this statement of fact supports the conclusion that Plaintiff had a serious medical condition or that he was incapacitated. Dr. Verma's records do not state that Cooper was unable to perform the functions of his job.  Further, taking medication on an as needed basis is not a regimen of treatment showing incapacity.**

Cooper took the medications as prescribed by Dr. Verma. Ex. K, Cooper Aff. at ¶ 9.

**OBJECTION:  Defendant objects to this statement as being self-serving and not subject to cross examination.  Defendant further denies that this statement of fact supports the conclusion that Plaintiff had a serious medical condition or that he was incapacitated. Dr. Verma's records do not state that Cooper was unable to perform the functions of his job. Further, taking medication on an as needed basis is not a regimen of treatment showing incapacity.**

29.    Cooper was also still taking the prednisone prescribed to him at the Emergency

Room and continued to take it for 7 days, as prescribed. Ex. D, SIU Recs. at 4; Ex. I, 9/8/16

Mem'l Hosp. Records at 18-23, 34; Ex. K, Cooper Aff. at ¶ 8.

**OBJECTION:  Defendant objects to this statement as being self-serving and not subject to cross-examination.  Defendant further denies that this statement of fact supports the conclusion that Plaintiff had a serious medical condition or that he was incapacitated.  The emergency room records do not state that Cooper was unable to perform the functions of his job.  The taking of prednisone for seven days does not show he was incapacitated and could not perform the functions of his job duties.  Plaintiff admits he felt better after a few days [Plaintiff's Ex. A at 86].  Plaintiff has not presented any evidence that taking prednisone would prevent him from returning to work.**

30.    Dr. Verma also gave Cooper a note stating that he could return to full duties at

work as of September 15, 2016 ("doctor's note"). Ex. L, 9/12/16 SIU Letter.

**RESPONSE:  Admit that is what is written in the letter.  However, Beelman denies the letter advises Beelman what medical condition Plaintiff was being treated for, when the medical problem began, whether Plaintiff was unable to perform the functions of his job duties, the length of treatment, or whether he was  incapacitated or under treatment for**

more than three days.  **This statement does not support the contention that Plaintiff had a serious medical condition, nor does it provide notice to Beelman that implicated the FMLA.**

34.     On October 5, 2016, when Cooper reported for work, Butler terminated him for absenteeism. Ex. A, Cooper Dep. at 123:13-15; Ex. B, Butler Dep. at 43:1-15; Ex. N, Termination Report; Ex. J, Def. 2d Supp. Ansrs.; Ex. O, Sadler Dep. 22:15-20, 23:2-11.

**RESPONSE:  Admit Cooper was terminated for absenteeism.  Defendant denies this was the only reason for termination.  Cooper failed to follow company policy for reporting time off in a timely matter on two occasions and for not providing a doctor's excuse slip for the absence on September 8, 2016 after waiting four days to go to the doctor a second time on September 12 [Plaintiff's Ex. B at 42-43].  Further, Cooper was terminated for being insubordinate in refusing to provide a doctor's note for his alleged absence due to the flu on October 3-4, 2016 per company policy.**

35.     Butler terminated Cooper because of his absences from work in September and October of 2016, specifically including September 8th through 14th when Cooper was absent because of his back. Ex. B, Butler Dep. at 43:1-15; Ex. P, 10/3/16 Email.

**RESPONSE:  Denied.  Butler terminated Cooper for his absenteeism, as well as his failure to follow company procedures in reporting time off and his downright refusal to provide a doctor's note clearing him to return to work for his October 3 and 4, 2016 absences. Ex. B, Butler Dep. at 42:10-19, 43:16-25, 44:1, 51:10-17; Ex. N, Termination Report. Furthermore, Cooper misconstrues the content of the email dated October 3, 2016. In that email, Butler said Cooper's absences had made it harder for Cooper's dispatcher to get her work done, and asked for the thoughts of Scott Walker, Beelman's safety director, on whether he thought Cooper needed to bring a doctor's note with him when he returned from his alleged flu on October 3 and 4, 2016. Ex. P, 10/3/16 Email.**

40.     Other than the Employee Handbook distributed to him at orientation, no other Beelman representative gave Cooper any documents regarding the FMLA. Ex. A, Cooper Dep. at 35:12-22; 36:4-14; Ex. B, Butler Dep. at 57:23-25; 58:1; Ex. C, Employee Handbook.

**RESPONSE:  Denied. Beelman also displayed an FMLA poster in the driver's break room [Plaintiff Ex. B, Butler Dep. at 57:18-19].**

**C.     Disputed Immaterial Facts:**

23.     Cooper took the medications as prescribed. Ex. K, Cooper Aff. at ¶ 8.

**RESPONSE:  Defendant objects to this statement of fact as being self-serving and not subject to cross examination.   The question of whether Cooper actually took the medications he was prescribed is immaterial because it does not affect one way or another Cooper's argument that he was incapacitated based on the prescriptions themselves. Cooper does not argue he was incapacitated due to the effects the drugs actually had on him.**

D.   <u>**Undisputed Immaterial Facts**</u>:

15.   On September 7, 2016, Cooper was hauling a load of pumpkins from Southern Illinois to Morton.  <u>Ex. A</u>, <u>Cooper Dep.</u> at 74:8-21; 85:13-21; 119:17-19; <u>Ex. I</u>, <u>9/8/16 Mem'l Hosp. Records</u> at 2, 3.

**RESPONSE:  Admit, but said fact is not material or relevant to Plaintiff's claim.**

36.   Butler alone decided to terminate Cooper. <u>Ex. B</u>, <u>Butler Dep.</u> at 42:3-8; 49:2-13; <u>Ex. O</u>, <u>Sadler Dep.</u> at 22:12-14. No one else participated in Butler's decision to terminate Cooper. <u>Ex. B</u>, <u>Butler Dep.</u> at 42:3-8; 49:2-13; <u>Ex. O, Sadler Dep.</u> at 22:12-14.

**RESPONSE:  These facts are irrelevant and immaterial because it would not affect the outcome of this suit one way or another. It is irrelevant whether Butler acted alone in his termination of Cooper.**

41.   On May 9, 2017, Cooper returned to SIU because of a flare-up with his back pain due to his degenerative disc disease. <u>Ex. Q</u>, <u>5/9/17 SIU Recs.</u> at 1. The physician at SIU again evaluated and treated Cooper for the chronic back pain he suffered due to his degenerative disc disease of L5-S1. <u>Id</u>. The physician prescribed Cooper Cyclobenzaprine HCl (Flexeril), Hydrocodone-Acetaminophen (Norco), and Gabapentin for his back pain. <u>Id</u>. at 1-5.

**RESPONSE:  The facts surrounding Cooper's May 9, 2017 doctor's visit are irrelevant and immaterial because they are post termination complaints and cannot be used to show a serious medical condition at the time of termination or that there was a showing of a chronic condition at the time of termination.  Such evidence would not affect the outcome of this suit under its substantive law due to the fact that it took place well after Cooper's termination from Beelman.**

42.     Beelman is a Delaware Corporation that does business in Illinois providing dry bulk commodity transportation services (i.e. commercial trucking) with facilities throughout the Midwest. Ex. R, Def. Ansr., D.E. 10 at ¶ 7.

**RESPONSE:  This fact is irrelevant and immaterial due to Beelman not disputing the applicability of the FMLA to Cooper because it had the requisite number of employees at the Springfield terminal.**

E.     **Additional Material Facts:**

1.     On September 8, 2016, Cooper told Butler his back was bothering him and he wasn't coming to work." Ex. B, Butler Dep. at 31:20-25, 54:10-14.

2.     When Cooper would experience a flare up for his back, he would take off a few days from work. Cooper Ex. A, Cooper Dep. at 46:25; 47:1-7.

3.     Cooper initially injured his back in 1992. Cooper Ex. A, Cooper Dep. at 101:8-17.

4.     Between 1992 and the start of Cooper's employment with Beelman in 2014, he had only three flare up episodes involving his back. Cooper Ex. A, Cooper Dep. at 46:4-6, 17-25; 47:13-15. Cooper went five or six years without back issues at all. Cooper Ex. A, Cooper Dep. at 46:11-12.

5.     When Cooper returned to work on September 15, 2016, he did not miss any days due to his back and was not planning on any additional time off for his back problems. Cooper Ex. A, Cooper Dep. at 142:18-21; 143:2-23.

6.     Cooper never applied for leave under the FMLA or requested FMLA related materials. Cooper Ex. A, Cooper Dep. at 39:7-14.

## ARGUMENT

Cooper's Motion for Summary Judgment should be denied because: (1) Cooper has failed to show by uncontroverted material facts that he had a serious health condition under the FMLA

either as a chronic condition or the under continuing treatment prongs of 29 C.F.R. § 825.115 in that there is no medical evidence that his low back pain was a chronic condition, that he was unable to perform the functions of his job, or that he had continuing treatment for more than three consecutive days; (2) Cooper has failed to demonstrate that he provided Beelman with enough information sufficient to establish probable cause that Cooper may have an entitlement to FMLA leave; and (3) Cooper failed to show that Beelman denied Cooper benefits owed to him under the FMLA because Beelman did not and would not have needed to rely on any allegedly FMLA protected leave when it made its decision to terminate Cooper.

### A.    Cooper Did Not Suffer From a "Serious Health Condition" Under 29 C.F.R. § 825.115(a).

Cooper argues he had a "serious health condition" as evidenced by a period of incapacity of more than three, consecutive calendar days that also involved treatment two or more times within the thirty day period of incapacity by a health care provider, or treatment by a health care provider on at least one occasion, which resulted in a regimen of continuing treatment under the supervision of a health care provider [Doc. 19 at 10]. Cooper bears the burden of establishing he had a serious health condition entitling him to FMLA leave. Johnson v. Wheeling Machine Products, 779 F.3d 514, 519 (8th Cir. 2015).

A serious health condition that entitles an employee to FMLA leave "means an illness, injury, impairment, or physical or mental condition that involves inpatient care as defined in §825.114 or continuing treatment by a health care provider as defined in §825.115." *See,* 29 C.F.R. §825.113(a).  Plaintiff does not claim his serious health condition is defined by inpatient care, but rather by continuing treatment of a health care provider.  A serious health condition involving continuing treatment by a health care provider includes a period of incapacity of more

than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. §825.115(a)(1),(2). "Incapacity" means the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

In order to show a serious health condition Plaintiff must demonstrate a treatment period of four or more days in which he was incapacitated. Seidle v. Provident Mut. Life Ins. Co., 871 F.Supp. 238, 243-244 (E.D. Penn. 1994); Bond v. Abbott Laboratories, 7 F. Supp.2d 967, 973 (N.D. Ohio 1998); Woodman v. Meisel Sysco Food Service Co., 657 N.W.2d 122, 139 (Mich. App. 2002). On September 8, 2016, Cooper visited the emergency room and was prescribed Flexeril, hydrocodone-acetaminophen (Norco), and prednisone. Plaintiff relies on his prescription for Norco, which carries a warning to not drive or operate machinery, to establish that he had a serious health condition. First, the prescription for Norco was for three consecutive, full days beginning at 11:00 am on September 8, 2016 and ending at 11:00 am on September 11, 2016. To be considered a serious health condition, the treatment must be for more than three consecutive, full days (emphasis added). Since Plaintiff's prescription was for three consecutive, full days, not four or more, he does not meet the definition of continuing treatment. Second, Plaintiff is unable to show that his treatment with Norco made him incapacitated or unable to work or perform other regular daily activities. The warning in the

prescription order to not drive or operate machinery is not a prohibition against driving or operating machinery, but simply a statement that the medication may make him drowsy. Plaintiff's discharge orders from the doctor do not state he is medically disqualified from driving or operating machinery. The discharge instructions and prescriptions do not indicate Plaintiff was incapacitated due to his treatment or inability to perform the essential functions of his job as a truck driver.

Department of Labor regulations define an employee unable to perform his duties as one "who must be absent from work to receive medical treatment for a serious health condition." 29 C.F.R. § 825.123(a)(emphasis added). Section 825.123(a) also provides that employees are unable to perform their job functions where a heath care provider finds that the employee is unable to work at all or unable to perform any one of the essential functions of their position. 29 C.F.R. § 825.123(a).  There is no statement from Plaintiff's health care providers at the emergency room that he must be absent from work to receive treatment or that Plaintiff is unable to work or perform any essential function of his position as a driver.

Cooper visited Dr. Verma on September 12, 2016, who prescribed Flexeril and Norco on an as needed basis. The record does not indicate how much or for how long he was to take this medication.  Dr. Verma provided Cooper with a note which said Cooper could return to full duties on September 15, 2016.  The note did not say Cooper was unable to work or perform the functions of his job from September 12-14, 2016.   To the extent Cooper claims he called Dr. Verma on September 14, 2016, and said that he would finish the Flexeril and Norco, it does not support the claim he was incapacitated.  Cooper was released to return to full duty on September 15 and was able to drive commercially on September 15, 2016.  If Cooper took the medication

for several days as claimed, then the prescriptions did not render him unable to work; Cooper cannot have it both ways.

The judgment as to whether an employee is incapacitated is based on a determination by a health care provider that the "employee cannot work (or could not have worked) because of the illness." Olsen v. Ohio Edison Co., 979 F.Supp. 1159, 1166 (N.D. Ohio 1997) (emphasis in original) (citing Seidle v. Provident Mut. Life Ins. Co., 871 F.Supp. 238, 244 (E.D. Penn. 1994). A statement that the employee has been excused from work is not the same as saying an employee cannot perform their job functions. Ryder v. Shell Oil Co., 131 F.Supp.2d 635, 642 (S.D. Texas 2015).

Therefore, it cannot be said that Cooper was incapacitated because his prescribed medications did not render him unable to work, nor did Dr. Verma indicate that Cooper had to stay off work or restrict him from driving. See Whitworth v. Consolidated Biscuit Co., 2007 WL 1075774, at *10 (E.D. Ky. April 6, 2007) (finding plaintiff failed to establish she was incapacitated for purposes of summary judgment where her testimony that she was unable to do anything during her period of alleged incapacity was contradicted by evidence that she, among other things, visited her doctor's office for treatment); see also Ridings v. Riverside Med. Ctr., 537 F.3d 755, 770 (7th Cir. 2008) ("[B]ecause the employee had not demonstrated that he was receiving treatment that rendered him unable to work, he did not demonstrate FMLA entitlement.")

Relatedly, Cooper argues he suffered from a serious health condition under 29 C.F.R. § 825.115(a)(1) because he received treatment from a health care provider two times within 30 days of his first day of incapacity. However, section 825.113(a)(1) states "a serious health condition involving continuing treatment by a health care provider includes a period of

incapacity of more than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) Treatment two or more times, within 30 days of the first day of incapacity….”

First, there must be an initial period of incapacity.  Plaintiff's evidence does not demonstrate he was incapacitated or that it was for more than three consecutive days.  Second, there must be two or more treatments within thirty days of the first day of incapacity.  Plaintiff only had one subsequent treatment in followup.  The regulation states there must be two or more treatments.  Plaintiff is unable to show that section 825.113(a)(1) applies to his situation.

Cooper also argues he was incapacitated because he visited a health care provider on at least one occasion, which resulted in a regimen of continuing treatment under the supervision of a health care provider pursuant to 29 C.F.R. § 825.115(a)(2). On both September 8 and 12, 2016, Cooper was seen by a health care provider and prescribed medications. On September 8, 2016, Cooper was directed to follow up if his symptoms continued or worsened over the next two days. When he visited Dr. Verma on September 12, 2016, he was prescribed medication on an as needed basis.  Dr. Verma advised Cooper to call back in two weeks if the pain had not improved, but he did not do so.

To apply 29 C.F.R. § 825.115(a)(2) to this context would effectively read the “supervision” language out of the provision. In Johnson v. Wheeling Machine Products, 779 F.3d 514 (8th Cir. 2015), the Eighth Circuit found the plaintiff there did not meet his burden of establishing the supervision or regimen requirements for “continuing treatment.” Id. at 521. The Court explained that “supervision” of a prescription regimen involved more than prescribing and sending the patient on their merry way. Id. at 520. The Eighth Circuit found the supervision

requirement involved either a phone call with the provider to communicate updates on the patient's condition and progress, or for a follow up appointment soon after the first visit. <u>Id</u>.

Here, Dr. Verma require or request updates from Plaintiff. There is no evidence Dr. Verma advised Cooper to call if complications arose. The records fail to show Cooper was prescribed anything more than a single course of medications by Dr. Verma. There is no evidence suggesting Cooper tried to renew his prescriptions.  In these ways, this case is similar to that of <u>Johnson</u> and require the Court find that Cooper did not have a serious health condition under 29 C.F.R. § 825.115(a)(2).

**B.** **<u>Cooper Did Not Have a Chronic Serious Medical Condition Under 29 C.F.R. § 825.115(c).</u>**

Cooper argues he had a serious health condition under the chronic condition prong of 29 C.F.R. § 825.115(c) based on his diagnosis of degenerative disc disease. A chronic serious health condition involves: (1) periodic visits to a health care provider; (2) a continuing condition over an extended period of time (including recurring episodes of a single underlying condition); <u>and</u> (3) those conditions which may cause episodic rather than a continuing period of incapacity. 29 C.F.R. § 825.115(c).

Cooper began to complain of intermittent back pain after a work injury around 1992. Cooper had about three instances of his back pain flaring up between 1992 and when he started at Beelman in March 2014. When this happened, Cooper usually only took a couple days off of work. Cooper said that he went about five or six years without any problems at all. Cooper fell in February 2015 and was diagnosed with mild degenerative disc disease. After his recovery from the precipitating injury, Cooper returned to work without restrictions. Prior to September 2016, Cooper did not make any complaints related to his back. None of the records indicate that

Cooper required continuing treatment in the future.  He had no regular appointments for his back condition.

Degenerative disc disorder, also, is not what was intended by Congress to come under serious health condition when it drafted the FMLA. The Senate Report of the FMLA states: "[T]he term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days…" S.Rep. No. 103-3, at 28, reprinted in 1993 U.S.C.C.A.N. 3, 30 (1993). See also 29 C.F.R. § 825.113(d). The Senate Report also states that "back conditions" may satisfy this test if they "requir[e] *extensive* therapy or surgical procedures." S.Rep. No. 103-3, at 29 (emphasis added).

Therefore, Cooper did not have a chronic serious health condition because he was not incapacitated, did not have periodic visits, the condition did not continue over an extended period of time, and his condition was not the type of condition meant by Congress to fall within FMLA.

### C. <u>Cooper Failed to Provide Information Sufficient to Establish Probable Cause He May Have Been Entitled to FMLA Leave.</u>

Cooper argues he provided Beelman with sufficient information to notify Beelman of his potential need for FMLA leave. To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave. 29 U.S.C. § 2612(e)(2). When the leave is unforeseeable, the employee's obligation is to provide sufficient information for an employer to reasonably determine whether the FMLA may apply to a request. <u>Lichtenstein v. University of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 303 (3rd Cir. 2012).

Here, Cooper called off work on September 8, and told Butler that his back was "bothering" him and that he was not coming in to work. Butler asked if Cooper injured his back or if it was work related, to which Cooper said he did not know. Cooper did not say he was unable to perform his job duties. He did not tell Butler how long he needed to be off work. Butler was not aware of the exact nature of Cooper's condition and only knew that once Cooper returned from work after his February 2015 injury there was not a change in job performance. When Cooper returned to work, he provided a doctor's note that indicated Cooper could return to full duties. There is no evidence that Cooper informed Beelman that he struggled to drive, get out of bed, bend over, or dress himself due to the pain he experienced. There is no evidence showing Cooper informed Beelman of any of the medications he took or that a doctor told him he should not work because of the medications he was taking. There is no evidence of any follow up conversation Cooper had with Butler or anyone else at Beelman because of his back. Cooper did not request FMLA leave forms from Beelman at any time.

While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant. Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980 (5th Cir. 1998). Back related complaints are no stranger in the trucking industry. The FMLA was designed only to protect employees with a serious health condition and only in a manner that accommodates the legitimate interests of employers. 29 U.S.C. § 2601(a)(4), (b)(3). Requiring an employer to undertake additional investigation when an employee says their back is bothering them to determine whether FMLA leave is appropriate is inconsistent with the purposes of the FMLA because it would neither protect employees with legitimate serious health conditions and it would unduly burden employers. See Satterfield, 135 F.3d at 981.

It is hard to imagine how an employee saying that their back is "bothering" them, without more, triggers an employer's responsibilities under the FMLA. Cooper's remarks in no way suggested that his condition may have been serious or that the FMLA could apply. A similar and more extreme case is that of <u>Walton v. Ford Motor Co.</u>, 424 F.3d 481, 486 (6th Cir. 2005), where the court found that the plaintiff did not carry his burden of establishing he provided sufficient notice to his employer.   In <u>Walton</u>, the plaintiff informed his supervisor he had "twisted his knee" and planned to have his knee evaluated by the medical department. <u>Id</u>. He never indicated he would need time off and he did not request FMLA forms. <u>Id</u>. The plaintiff was informed by his doctor not to return to work for more than five days until he could see an orthopedist. <u>Id</u>. at 482-83. The orthopedist instructed the plaintiff to remain off work for the next four weeks. <u>Id</u>. at 483. The work log entries only indicated the plaintiff was "sick." <u>Id</u>.

The plaintiff in <u>Walton</u> had many more flags that could have served as notice to his employer under the FMLA than in this case. Cooper only told Butler that his back bothered him, he was off work for five work days, and when he returned he provided a note which only said he could return to work.   At no time did Cooper discuss his doctor or hospital visits with Butler. Butler had no knowledge and was not informed by Cooper concerning any medical treatment, prescriptions or follow up care.   Therefore, Cooper failed to provide the requisite notice to Beelman under the FMLA.

Regardless of the notice provided by Cooper, Beelman's Handbook contains policies and procedures for notice required to take FMLA leave. An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent of unusual circumstances. 29 C.F.R. § 825.302(d). Absent unusual

circumstances, an employee's failure to comply with the usual notice requirements can result in FMLA-protected leave being delayed or denied. 29 C.F.R. § 825.302(d).

Here, Cooper never provided written notice, never requested FMLA leave, and never submitted a certification as required under the policies. Cooper has not presented evidence of unusual circumstances justifying his failure to comply with the policy requirements. Cooper acknowledged he was provided with a copy of the policy. Cooper has no evidence Beelman has waived these requirements. Therefore, Cooper did not follow the usual and customary notice requirements at Beelman for requesting FMLA leave.

> **D.**    **Beelman Did Not Deny Cooper Benefits Owed To Him Under the FMLA Because the Evidence Shows Sufficient Independent Grounds for Cooper's Termination.**

Cooper argues Beelman denied him the benefits entitled to him under the FMLA by using allegedly FMLA protected absences as a negative factor in its employment decisions, and that Beelman prejudiced Cooper by failing to provide him with notice of his eligibility of his rights under the FMLA or a designation notice. An employee is not entitled to any right, benefit, or position of employment other than that to which he would have been entitled had the employee not taken the leave. 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a). The employer may present evidence to show it would have discharged the employee even if he had not been on FMLA leave. Kohls v. Beverly Enterprises Wisconsin, Inc., 259 F.3d 799, 805 (7th Cir. 2001). An employer may terminate an employee for poor performance when he would have been terminated even absent his leave. Id.; see also Clay v. City of Chicago Dep't of Health, 143 F.3d 1092, 1094 (7th Cir. 1998).

First, Beelman did not interfere with or deny Cooper any FMLA benefits. Beelman's Handbook clearly states: "Employees on FMLA leave must use all of their unused vacation and

any other accrued paid time off before beginning unpaid leave." An employer may require an employee to substitute any accrued paid vacation leave, personal leave or sick leave for leave provided under FMLA. 29 U.S.C. §2612(d)(2)(A). The FMLA was not intended to be a substitute for valid sick leave and vacation policies. Plaintiff cannot pocket paid vacation leave, sick leave or accrued paid leave and request FMLA leave be used in its place. Thus, before Plaintiff is entitled to use FMLA leave, he must exhaust his unused vacation time or other accrued time off. Plaintiff did not exhaust this paid leave under the Beelman policy and cannot be heard that any FMLA right was interfered with by Beelman.

Second, Beelman did not terminate for any activities related to FMLA. Plaintiff habitually failed to comply with Beelman's call-in procedure and absenteeism policy throughout September and October 2016. According to the Handbook, if one is unable to work because of sickness or injury, the employee must call in and inform dispatch or the terminal manager at least three (3) hours prior to the driver's scheduled departure time. The Handbook prescribes any absence over one consecutive working day will require a doctor's note for the employee to provide his manager or dispatcher. At the relevant times, Plaintiff's work schedule started at around 3:30 a.m. Therefore, by the time Plaintiff notified Beelman he was not coming in to work on September 8, 2016, he did so in violation of the call-in policy.

On Monday, October 3, 2016, Plaintiff e-mailed Sadler at 9:11 a.m., nearly six hours after his scheduled start time, to inform her he would not make it in because he was "sick" after going out of town for the weekend. Sadler responded by asking Plaintiff to come back with a doctor's note before returning to work. Plaintiff told Sadler he was a grown man and he had the flu, he knew how to take care of himself, and he refused to provide a doctor's note. When

Plaintiff was terminated, the reasons cited were his habitual absenteeism and his refusal to provide a doctor's note.

On October 4, 2016, Plaintiff did not inform his dispatcher he would not be at work. Even if he did contact Butler on October 4, Plaintiff admits it would have been around 6:00 or 7:00 a.m. This, too, was in violations of the call-in procedures.

Cooper argues that Butler relied on Cooper's September 8 – 14, 2016 absences in terminating him. This, though, is not the full picture. When asked what occurred at the meeting of October 5, 2016 that resulted in Cooper's termination, Butler said that he decided to terminate Cooper after he said that he told Sadler that he refused to provide a doctor's note for his October 3 and 4, 2016 absences, and that Cooper displayed a pattern of not respecting Beelman work policies. Such insubordination is grounds for termination.

This course of conduct, alone, was enough for Cooper to have his employment terminated. Even when an employer "interferes" with an employee's rights under the FMLA, the employer will not be liable if it can show it would have made the same decision had the employee not exercised the employee's rights. Estrada v. Cypress Semiconductor (Minnesota) Inc., 616 F.3d 866, 871 (8th Cir. 2010). Therefore, Cooper cannot show there is no genuine issue of material fact that he was prejudiced due to his termination when he had absences to which the FMLA allegedly applied.

## **CONCLUSION**

For the reasons set forth above, Beelman respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment because he has failed to show there is no genuine issue of material fact that he was incapacitated, provided sufficient notice to Beelman under the FMLA, or that Beelman would not have made the decision to terminate him regardless of the

status of Cooper's absences of September 8 – 14, 2016, as well as any other relief the Court

deems appropriate.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

/s/ Ted L. Perryman
Ted L. Perryman, #02170504
Korissa M. Zickrick, #06285055
Andrew P. Laquet, #6317410
1034 S. Brentwood Blvd, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850/Fax: (314) 421-4346
tperryman@robertsperryman.com
kzickrick@robertsperryman.com
***Attorneys for Beelman Truck Company***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been filed upon the court's electronic filing system this 4th day of September 2018 to:

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Ste. 300
Chicago, IL 60604
***Attorneys for Plaintiff***

/s/ Ted L. Perryman