E-FILED
Tuesday, 04 September, 2018 07:57:13 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| MARK COOPER, | No. 3:17-cv-03102-RM-TSH |
| Plaintiff, | |
| v. | Judge Richard Mills |
| BEELMAN TRUCK CO., | Magistrate Judge Tom Schanzle-Haskins |
| Defendant. | |

**PLAINTIFF MARK COOPER'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mark Cooper ("Cooper"), responds to Defendant, Beelman Truck Co.'s

("Beelman") Motion for Summary Judgment as follows:

## INTRODUCTION

In its motion, Defendant incorrectly construes the facts in the light most favorable to

itself and omits several key facts that are unhelpful to its position.  As described herein and in

Plaintiff's Motion for Summary Judgment, Cooper suffered from severe back pain stemming

from degenerative disc disease, which was diagnosed when he went to the emergency room on

September 8, 2016.  Cooper was unable to drive, and consequently unable to work, from

September 8, 2016 through September 14, 2016 because of the pain he suffered and the

prescription pain medication he was given.  Mick Butler ("Butler") was aware Cooper had a

history of back injury and pain, knew that Cooper was absent from work in order to seek medical

attention for his back, and received Cooper's doctor's note clearing him to return to work.  Taken

together, Defendant had sufficient notice of Plaintiff's probable need for FMLA leave.

However, the trier of fact must resolve questions regarding the sufficiency of notice. Defendant

did not designate these absences as FMLA-protected or provide Cooper with any of the requisite

designation, eligibility, or rights and responsibilities notices.  Within weeks, Butler terminated

Cooper because of absenteeism, expressly relying upon his absences that qualified for FMLA protection. Consequently, Defendant interfered with Cooper's rights under the FMLA and Defendant's motion must be denied.

## RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

I.      **UNDISPUTED MATERIAL FACTS.**

"[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This case involves one count of FMLA interference: material facts pertain to the existence of Plaintiff's serious health condition, eligibility for FMLA leave, notice to the Defendant, and FMLA benefits the Defendant denied the Plaintiff. Multiple factual issues may be material based upon whether or not the Court accepts Defendant's defenses. As such, Plaintiff includes factual citations pertaining to Defendant's arguments and defenses raised in its Motion as 'material facts' while maintaining that the arguments and legal premises are flawed and/or are inconsistent with governing law as detailed in the Argument section below.

1.      Admit.

2.      Admit.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Admit.

8.      Admit.

12.     Admit.

13.     Admit.

14.     Admit.

15.     Admit.

16.     Admit.

17.     Admit.

18.     Admit.

20.     Admit.

21.     Admit.

22.     Admit.

23.     Admit.

24.     Admit.

25.     Admit.

26.     Admit.

27.     Admitted in part, denied in part.  Admit that the Memorial Medical Center records for September 8, 2016 do not include the language that "Cooper was not able to perform the functions of his job."  Denied that that records contain no statement that Cooper was unable to perform the functions of his job because the prescription orders state "DO NOT OPERATE MACHINERY OR DRIVE" and, for Cooper who worked as a truck driver, an inability to drive equates to an inability to perform the functions of his job.  9/8/16 Mem'l Hosp. Records, Def. Appx. 040.

28.     Admit.

29.     Admitted in part, denied in part.  Admit that Cooper did not tell Butler how long he was going to be out for.  Denied insofar as this Paragraph implies that Butler asked Cooper how long he would be out for as this assertion is unsupported by the cited testimony.  See Butler Dep., Def. Appx. 010.

30.     Admitted in part, denied in part.  Admit that Butler testified that he told Deanna Gotch that he had asked Cooper if he had injured his back at work and told Deanna Gotch that Cooper had replied 'not that he was aware of.'  Butler Dep., Def. Appx. 010.  Denied that Butler and Cooper actually had this discussion during their conversation on September 8, 2016.  See Ex. 1[1], Butler Dep. at 31:6-25, 36:4-9, 36:20-25, 37:1-13; Ex. 2, Cooper Dep. at 74:16-21, 85:8-21; Ex. 3, Def. Ansrs. to Interrogatories at ¶ 6; Ex. 4, Def. 2d Supp. Ansrs. to Interrogatories at ¶ 10.

31.     Admit.

33.     Admit that Cooper was off work from September 8, 2016 through September 8, 2016.  Paragraph 33 of Defendant's Motion states that Plaintiff was off through September 8, 2015, but this appears to be a scrivener's error on the year.

34.     Admit.

35.     Admit.

36.     Admit.

37.     Admit.

38.     Admit.

39.     Admit.

40.     Admit.

41.     Admit.

---

[1] Although Defendant attaches excerpts of Butler and Cooper's deposition transcripts, Plaintiff includes citations to additional parts of the record not included in Defendant's submission.  For this reason,

42.     Admit.

43.     Admit.

44.     Admit.

45.     Admitted in part, denied in part.  Plaintiff admits that in his deposition testimony, Cooper stated he told Sadler he was "a grown man and I had the flu, I knew how to take care of myself."  Cooper Dep., Def. Appx. 034.  Plaintiff denies that he used the exact language that he Sadler was "a grown man and I had the flu, I knew how to take care of myself."  Cooper Dep., Def. Appx. 034.   The exchange between Cooper and Sadler was documented in their emails dated October 3, 2016.  See 10/3/16 Emails, Def. Appx. 047.  Cooper actually responded to Sadler's email requesting that he bring a doctor's note by stating: "im not spending money to go to the doctors. i just got some medicine from the store".  10/3/16 Emails, Def. Appx. 047.

46.     Admit.

47.     Admit.

48.     Admit.

49.     Admitted in part, denied in part.  Plaintiff admits that he likely started work around 3:00AM or 3:30AM while working on the gypsum run after January 1, 2016.  Ex. 2, Cooper Dep. 77:2, 10-14.  Plaintiff denies the characterization that he had a "normal" start time. See Ex. 1, Butler Dep. 16:14-23; Ex. 2, Cooper Dep. at 77:2, 10-14.

50.     Admitted in part, denied in part.  Plaintiff admits that he returned to work on October 5, 2016 and was told by Butler that he was terminated for his attendance record. Plaintiff denies that Butler told Cooper he was terminated for not bringing a doctor's note (as detailed in Section II).

52.     Admit.

53.     Admit.

54.     Admit.

55.     Admit.

56.     Admitted in part, denied in part.  Admitted that Plaintiff never spoke with anyone at Beelman regarding FMLA leave.   Plaintiff objects to and denies Paragraph 56 in part due to the vagueness of the statement "Plaintiff never applied for leave under the FMLA…"

## II.     DISPUTED MATERIAL FACTS.

27.     Admitted in part, denied in part.  Admit that the Memorial Medical Center record for September 8, 2016 do not include the language that "Cooper was not able to perform the functions of his job."  Denied that that records contain no statement that he was unable to perform the functions of his job because the prescription orders state "DO NOT OPERATE MACHINERY OR DRIVE" and, for Cooper who worked as a truck driver, an inability to drive equates to an inability to perform the functions of his job.  See 9/8/16 Mem'l Hosp. Records, Def. Appx. 040.

29.     Admitted in part, denied in part.  Admit that Cooper did not tell Butler how long he was going to be out for.  Denied insofar as this Paragraph implies that Butler asked Cooper how long he would be out for as this assertion is unsupported by the cited testimony.  See Butler Dep., Def. Appx. 010.

30.     Admitted in part, denied in part.  Admit that Butler testified that he told Deanna Gotch that he had asked Cooper if he had injured his back at work and told Deanna Gotch that Cooper had replied 'not that he was aware of.'  Butler Dep., Def. Appx. 010.  Denied that Butler and Cooper actually had this discussion during their conversation on September 8, 2016.  See Ex.

1, Butler Dep. at 31:6-25, 36:4-9, 36:20-25, 37:1-13; Ex. 2, Cooper Dep. at 74:16-21, 85:8-21;

Ex. 3, Def. Ansrs. to Interrogatories at ¶ 6; Ex. 4, Def. 2d Supp. Ansrs. to Interrogatories at ¶ 10.

    32.    Denied.  The record fails to establish what time Cooper called off work on

September 8, 2016 or what time he was scheduled to start work on September 8, 2016.  See Ex.

1, Butler Dep. 16:14-23; Ex. 2, Cooper Dep. 77:2, 10-14

    45.    Admitted in part, denied in part.  Plaintiff admits that in his deposition testimony,

Cooper stated that he told Sadler was "a grown man and I had the flu, I knew how to take care of

myself."  Cooper Dep., Def. Appx. 034.  Plaintiff denies that he used the exact language that he

Sadler was "a grown man and I had the flu, I knew how to take care of myself."  Cooper Dep.,

Def. Appx. 034.   The exchange between Cooper and Sadler was documented in their emails

dated October 3, 2016.  See 10/3/16 Emails, Def. Appx. 047.  Cooper actually responded to

Sadler's email requesting that he bring a doctor's note by stating: "im not spending money to go

to the doctors. i just got some medicine from the store".  10/3/16 Emails, Def. Appx. 047.

    49.    Admitted in part, denied in part.  Plaintiff admits that he likely started work

around 3:00AM or 3:30AM while working on the gypsum run after January 1, 2016.  Cooper

Dep. 77:2,10-14.  Plaintiff denies the characterization that he had a "normal" start time.  See

Butler Dep. 16:14-23; Cooper Dep. at 77:2,10-14.

    50.    Admitted in part, denied in part.  Plaintiff admits that he returned to work on

October 5, 2016 and was told by Butler that he was terminated for his attendance record.

Plaintiff denies that Butler told Cooper he was terminated for not bringing a doctor's note.  See

Butler Dep., Def. Appx. 011; Ex. 2, Cooper Dep. at 88:7-10; 89:1-8; 136:15-25; 137:1-25;

138:1-3; Ex. 3, Def. Ansrs. to Interrogatories at ¶ 6.  Furthermore, Defendant's citations to the

record do not support this contention.  See Cooper Dep., Def. Appx. 034; Butler Dep., Def.

Appx. 011.  In Defendant's cited section, Cooper testified that "[Butler] said that they decided at corporate that they were going to let me go because of my attendance record."  Cooper Dep., Def. Appx. 034.  In Defendant's cited section, Butler testified that Cooper had told him he was not bringing in doctor's excuses and asked about retrieving his personal belongings. Butler Dep., Def. Appx. 011.  Butler also testified "I told him that I was terminating him.  That I no longer needed his services."  Id.  This section does not contain any additional testimony from Butler regarding what specifically he told Plaintiff or said to Plaintiff.  See id.

51.  Plaintiff denies Paragraph 51.  After January 1, 2016, Plaintiff was assigned to the day shift.  Ex. 1, Butler Dep. 16:14-23.  The day shift did not have a specific, set start time, and the record does not establish that Plaintiff had a set start time.  See Ex. 1, Butler Dep. 16:21-23; Ex. 2, Cooper Dep. at 77:2,10-14.  In addition, Plaintiff objects to and denies Paragraph 51 on the basis that it is vague and states a legal conclusion as to what constitutes "the relevant times."

56.  Plaintiff objects to and denies in part Paragraph 56 due to the vagueness of the statement "Plaintiff never applied for leave under the FMLA…"  Plaintiff cannot discern if Defendant intends "applied for" to mean that Cooper did not complete an application request for FMLA leave, or if it means that Plaintiff did not seek or request FMLA-protected leave.  As such, this statement contains both factual and legal conclusions.  Plaintiff contends that his request for time off on September 8, 2016 served as a request for FMLA-protected leave; consequently Cooper denies "Plaintiff never applied for leave under the FMLA…"

**III.  DISPUTED IMMATERIAL FACTS.**

None.

**IV.  UNDISPUTED IMMATERIAL FACTS.**

7.    Admit.  Plaintiff's specific report of how his pain was exacerbated in February of 2015 does not impact the outcome of any element of the claims.

9.    Admit.  Plaintiff does not claim his February 2015 absence relates to his FMLA claim in any way other than providing Defendant with baseline information that he had a history of back injury and back pain.  As such, his treatment plan for February of 2015 is immaterial.

10.    Admit.  Plaintiff does not claim his February 2015 absence relates to his FMLA claim in any way other than providing Defendant with baseline information that he had a history of back injury and back pain.  As such, his treatment plan for February of 2015 is immaterial.

11.    Admit.   Plaintiff does not claim his February 2015 absence relates to his FMLA claim in any way other than providing Defendant with baseline information that he had a history of back injury and back pain.  As such, the day he was discharged from the hospital is immaterial.

19.    Admit.  In its Motion, Defendant does not claim that the traffic citation was a part of its decision to terminate Plaintiff.  In addition, Plaintiff does not claim that this citation impacted his FMLA rights; consequently, it is immaterial.

## V.    ADDITIONAL MATERIAL FACTS.

1.    From March 2014 until the Company lost its coal contract on January 1, 2016, Cooper worked the night shift, which started at 6:00PM.  Ex. 1, Butler Dep. 10:9-18; 12:3-4; 15:1-18.  After January 1, 2016, Cooper was reassigned to the day shift.  Id. at 16:14-23.

2.    The day shift is not a set job, so there is no single start time.  Id. at 16:21-23.

3.    While on the day shift, Cooper worked "basically my own hours" and that he "probably" started work "about 3:00, 3:30 in the morning" when he was working on the gypsum run.  Ex. 2, Cooper Dep. 77:2, 10-14.

4.      The morning of September 8, 2016, Cooper called his supervisor, Butler, and informed Butler that his back hurt, he could not work, and he was seeking medical attention for his back.  Driver Attendance Report, Def. Appx. 022, Pltf. Ex. 1, Butler Dep. at 31:6-25, 36:4-9, 36:20-25, 37:1-13; Pltf. Ex. 2, Cooper Dep. at 74:16-21; Pltf. Ex. 4, Def. 2d Supp. Ansrs. to Interrogatories.

5.      While at the Emergency Room, Cooper was given several medications to treat his acute or chronic back pain, including hydrocodone-acetaminophen, prednisone, and hydromorphone, and an injection of Dilaudid.  Mem'l Hosp. Recs., Def. Appx. 038; Pltf. Ex. 2, Cooper Dep. at 86:2-6.

6.      The Emergency Room performed a CT scan on Cooper and found he suffered from degenerative disc disease.  Mem'l Hosp. Recs., Def. Appx. 038-39; SIU Recs., Def. Appx. 042.

7.      The Emergency Room prescribed Cooper several medications to continue taking after his discharge.  Mem'l Hosp. Recs., Def. Appx. 040.  Cooper was prescribed cyclobenzaprine (Flexeril 10 mg) and instructed to take this medication from September 8, 2016 through September 11, 2016.  Id.  Cooper was also prescribed hydrocodone-acetaminophen (Norco) and instructed to take this medication from September 8, 2016 through September 11, 2016.  Id.   Additionally, Cooper was prescribed prednisone and instructed to take this medication from September 8, 2016 through September 15, 2016.  Id.

8.      The prescription orders given to Cooper for the hydrocodone-acetaminophen stated "DO NOT OPERATE MACHINERY OR DRIVE."  Id.

9.      Cooper took the medications as prescribed.  Ex. 5, Affidavit of Mark Cooper ("Cooper Aff.") at ¶ 8.

10.     Cooper had continued to experience back pain at an 8/10 level since his visit to the Emergency Room on September 8, 2016 and despite taking his prescribed medications.  SIU Recs., Def. Appx. 042; Pltf. Ex. 5, Cooper Aff. at ¶¶ 5-8.

11.     From September 8, 2016 through September 14, 2016, Cooper's back pain made it nearly impossible for him to drive.  Pltf. Ex. 5, Cooper Aff. at ¶ 5.  He struggled to get out of bed without help, had trouble bending over, and had difficulty getting dressed.  Id. at ¶ 6, 7.

12.     Dr. Verma gave Cooper prescriptions for cyclobenzaprine HCI (Flexeril) and hydrocodone-acetaminophen (Norco) to take for his back pain.  SIU Recs., Def. Appx. 042, 045.  Cooper took the medications as prescribed by Dr. Verma.  Pltf. Ex. 5, Cooper Aff. at ¶ 9.

13.     Cooper was also still taking the prednisone prescribed to him at the Emergency Room and continued to take it for 7 days, as prescribed.  SIU Recs., Def. Appx. 042, 045; Pltf. Ex. 5, Cooper Aff. at ¶ 8.

14.     On May 9, 2017, Cooper returned to SIU because of a flare-up with his back pain due to his degenerative disc disease.  Pltf. Ex. 6, 5/9/17 SIU Recs. at 1. The physician at SIU again evaluated and treated Cooper for the chronic back pain he suffered due to his degenerative disc disease of L5-S1.  Id.  The physician prescribed Cooper Cyclobenzaprine HCI (Flexeril), Hydrocodone-Acetaminophen (Norco), and Gabapentin for his back pain.  Id. at 1-5.

## ARGUMENT

Defendant has predicated its motion upon versions of the facts presented in the light most favorable to it, contrary to the wealth of precedent requiring the opposite: that all facts be viewed in a light most favorable to Cooper, the non-movant. *See Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (the evidence of the non-movant "is to be believed, and all justifiable inferences are to be drawn in her favor"). Recently, the Seventh Circuit reiterated that where (as

here) the plaintiff has articulated a narrative of events supported by admissible evidence contradicting the defendant's narrative in response to summary judgment, a defendant cannot simply "insist[] instead on its own version of events.  That approach might work in a trial, but it cannot sustain summary judgment." *Baines v. Walgreen Co.*, 863 F.3d 656, 659 (7th Cir. 2017). Because evidence exists to support each element of each of Cooper's claim when viewed in a light most favorable to *him*, Defendant's motion must be denied.  *See Loudermilk v. Best Pallet Co. et al.*, 636 F.3d 312 (7th Cir. 2011) (reversing and remanding the district court's grant of summary judgment after concluding that the judge had improperly taken the employer's view of the evidence).

The Seventh Circuit has also expressed frustration with defendants "present[ing] the evidence they'd like a jury to accept, rather than just the evidence that . . . provides a permissible basis for a grant of summary judgment," adding that "such a mode of presentation is unhelpful to the court."  *Vodak v. City of Chicago*, 639 F.3d 738, 740 (7th Cir. 2011).  Here, Defendant conveniently omits Plaintiff's diagnosis of degenerative disc disease, the prescriptions of pain medication to be taken throughout his absence, and the prescription instructions that state Cooper cannot drive while taking the medications.  In addition, Defendant ignores the consistent testimony and supporting documents that show Beelman based its decision to terminate Cooper on his absences.  When considering the evidence in a light most favorable to Plaintiff, Defendant's motion must be denied.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014) (reversing the lower court's award of summary judgment and reiterating that "[b]y weighing the evidence and reaching factual inferences contrary to [the non-movant's] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non-moving party.").

I.      **PLAINTIFF SUFFERED FROM A SERIOUS HEALTH CONDITION.**

    **A.  Plaintiff Met His Burden to Show He Was Incapacitated For More Than Three Consecutive Calendar Days.**

The record shows that Cooper was incapacitated for more than three days because of his health condition and treatment for it.  Under the FMLA "incapacity" includes an "inability to work...or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom."  29 C.F.R. § 825.113(b).  Defendant relies on nonbinding case law from other circuits to claim that Plaintiff needs to present a physician's statement to prove incapacity.  *See Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D. Ohio 1997); *Seidle v. Provident Mut. Life Ins. Co.*, 871 F.Supp. 238, 244 (E.D. Penn. 1994); *Ryder v. Shell Oil Co.*, 131 F. Supp.2d 635, 642 (S.D. Texas 2015).  However, the Seventh Circuit has expressly rejected this argument, holding that an employee may prove incapacity through lay testimony and is *not* required to present expert testimony.  *See Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832 (7th Cir. 2014).  Cooper attested that he struggled to drive, get out of bed, bend over, or dress himself due to the pain he experienced, which are all regular daily activities.  See Pltf. Ex. 2 at 85:19-21; Pltf. Ex. 5 at ¶¶ 6, 7.  His inability to perform such regular daily activities due to the back pain he suffered from September 8 through the 14th establish that Cooper suffered from more than three, consecutive days of incapacity.

Moreover, the medical records also evince that Cooper was incapacitated from September 8 through September 14 because of the medication he took to treat his back pain.  An employee may be incapacitated not only by his serious health condition, but also due to the treatment for said condition.  *See* 29 C.F.R. § 825.113(b).  Memorial Hospital prescribed Cooper hydrocodone-acetaminophen (Norco) on September 8, 2016 to be taken over a 3-day period, thus his prescription would have run out on September 11, 2018.  See Mem'l Hosp. Recs., Def. Appx.

040.  The instructions with this prescription expressly prohibited Cooper from driving.  Id.

Cooper then saw his physician, Dr. Verma, on September 12 for follow-up treatment.  See SIU

Recs., Def. Appx. 042.  Dr. Verma again prescribed hydrocodone-acetaminophen to Cooper and

also gave him a note stating he could not return to work until September 15.  See SIU Recs., Def.

Appx. 045, Dr. Verma Ltr., Def. Appx. 046.  Based upon the medical records, Cooper was

unable to drive because of the treatment he received for his back pain from September 8 through

September 14, which is a period of 7 consecutive calendar days.  Since Cooper worked as a truck

**driver**, the inability to drive equates to the inability to work.  *See* 29 C.F.R. § 825.113(b); 29

CFR 825.123(a).  Therefore, Cooper was incapacitated under the FMLA.

### B.  Plaintiff's Back Injury and Pain Are Serious Health Conditions.

Defendant cites to the Senate Report to argue that Plaintiff's back pain was too common

to constitute a serious health condition under the FMLA.  However, the Senate Report supports

Plaintiff's position that Cooper suffers from a serious health condition.  Indeed, the Senate

Report specifically includes "spinal injuries."  *See Olsen*, 979 F. Supp. at 1163.  On September 8,

2016, Cooper was diagnosed as suffering from degenerative disc disease, which causes him to

experience severe back pain.  See Mem'l Hosp. Recs., Def. Appx. 039; SIU Recs., Def. Appx.

042.  Degenerative disc disease is deterioration of the discs of the spine, i.e. a spinal injury.  *See*

*Clay v. City of Chicago Dep't of Health*, 143 F.3d 1092, 1093 (7th Cir. 1998) (plaintiff had been

granted multiple leaves because she suffered from a degenerative disc disease that caused severe

back pain, which qualified as a serious health condition); *see also Sims v. Alameda–Contra*

*Costa Transit Dist.*, 2 F.Supp.2d 1253 (N.D.Cal.1998) (granting plaintiff bus driver's motion for

summary judgment and finding severe back pain to be a serious health condition).

A serious health condition involving continuing treatment by a health care provider includes: a period of incapacity of more than three, consecutive calendar days that also involves (1) treatment two or more times, within 30 days of the first day of incapacity by a health care provider; *or* (2) treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of a health care provider.  29 U.S.C. § 2611(11); 29 CFR 825.115(a).  Cooper's back pain flared up on September 7, 2016.  He received treatment from health care providers on September 8 and 12, 2016, which are within 30 days of his first day of incapacity.  Therefore, he qualifies as suffering from a serious health condition under 29 CFR 825.115(a)(1).

In addition, Cooper was prescribed medications by physicians on September 8 and 12, 2016.  A course of prescription medicine constitutes a regimen of continuing treatment under the FMLA.  *Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1329 (M.D. Ala. 2002).  As such, Cooper has established that he suffered from a serious health condition as defined by 29 CFR 825.115(a)(2).

Finally, Cooper also demonstrated that he suffered from a chronic condition that entitled him to FMLA protections.  A chronic health condition is defined as one which (1) requires periodic visits for treatment by a health care provider (defined as at least twice a year); (2) continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) may cause episodic rather than a continuing period of incapacity.  29 C.F.R. § 825.115(c).  Treatment for a chronic condition includes a course of prescription medicine to resolve or alleviate the underlying condition.  *See Harrell v. Jacobs Field Servs. N. Am., Inc.*, No. 09-CV-02320, 2011 WL 3044863, at *5 (C.D. Ill. July 25, 2011) (finding plaintiff received treatment for chronic allergy condition where physician gave plaintiff an injection and

prescription for Claritin D).  In September 2016, Cooper visited two health care providers to treat his back pain.  Memorial gave Cooper a shot of Dilaudid to treat his back pain, and then prescribed him three medications.  Dr. Verma gave Cooper new prescriptions to continue the course of medications.  In May of 2017, a health care provider treated Cooper's back pain for the third time within less than twelve months.  See Pltf. Ex. 6.  During that visit, SIU again prescribed him medication.  Id.  This demonstrates that Cooper received treatment for his back pain through three visits to health care providers within a year, and during two documented episodes of incapacity within that same one-year period.  Therefore, Cooper suffered from a chronic condition that entitled him to FMLA protections.

## II.    PLAINTIFF PROVIDED SUFFICIENT NOTICE OF HIS NEED FOR LEAVE.

"[T]he notice inquiry is a "fact-rich question ... perhaps best resolved by the trier of fact..."  *Pagel v. TIN Inc*., 685 F.3d 622, 628 (7th Cir. 2012) (*internal citations omitted*).  *See also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 303–04 (3d Cir. 2012) (noting that the "critical test" in determining the sufficiency of notice is "how the information conveyed to the employer is reasonably interpreted," which is generally a question of fact) (*internal quotations and citations omitted*).  In assessing the sufficiency of notice, an employee's comments and actions must be placed in their proper context.  *See Burnett v. LFW Inc.*, 472 F.3d 471, 480-81 (7th Cir. 2006).  An employer must pay attention to all of the information it receives from an employee, and cannot treat each statement or action as though it exists in a vacuum.  *Id*.  The notice requirement is fulfilled where the progression of information would provide a reasonable employer with notice of a potential need for leave.  *Id*.  "[I]t is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave."  *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997).  Once an

employee has expressed his need for leave, "[t]he employer will be expected to obtain any additional required information through informal means."  Further, "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee."  *Id*.

Here, Plaintiff satisfied his notice obligation because he provided Defendant with enough information to indicate his likely need for FMLA leave.  Butler was aware that Cooper had injured his back on two prior occasions, including having pain that required him to miss work as recently as May of 2016.  Cooper told Butler that he was unable to work because of his back and was seeking medical attention for his back.  Cooper then provided Butler with a medical release after a 7-day absence.  Cooper has no prior demonstrated absences for extended amounts of time, which should have indicated that this leave was for a serious health condition.  In his deposition, Butler seemed to suggest that he believed Cooper had not sought medical attention until September 12, 2016, which bothered him.  However, if Butler had taken issue with the doctor's note, he had the opportunity and obligation to require Cooper to provide additional information.  *See Sims*, 2 F.Supp.2d at 1266 (finding bus driver provided sufficient notice of his intent to take leave by calling off sick and submitting medical releases upon his return where employer failed to clearly request a more detailed medical certification).  With this cumulative information, a jury may reasonably find that Cooper satisfied his obligation to notify Defendant that Cooper likely had an FMLA-qualifying condition.  *See DeLuca v. Simmons Mfg. Corp.*, No. 3:07-CV-2143, 2009 WL 1165340, at *6–7 (M.D. Pa. Apr. 29, 2009) (employer received sufficient notice of employee's possible need for FMLA leave where employee called off work by stating she was receiving treatment from a doctor and after she had previously taken medical leave).

Furthermore, satisfaction the notice inquiry does not depend upon Cooper complying with Defendant's call-in policies. *See Harvey v. Waste Mgmt. of Ill., Inc.*, No. 08 CV 6828, 2010 WL 1741742, at *4–5 (N.D. Ill. Apr. 29, 2010) (finding that employee gave notice of his need for FMLA leave despite not following employer's policies where employee looked ill, left voicemail stating he went to the hospital, and told his supervisor he was sick and unable to work). As detailed below, Cooper called out in compliance with Defendant's FMLA 48-hour notice policy. In addition, the record fails to conclusively establish Cooper's start time and, therefore, fails to establish whether he called in compliance with the 3-hour sick notice period. Consequently, if the Court finds that compliance with Defendant's 3-hour sick time notice policy, then there exists a genuine issue of fact to be decided by the jury.

## III.  DEFENDANT DENIED PLAINTIFF FMLA BENEFITS.

### A.  Defendant Cannot Rely on Its PTO Policies to Avoid Liability.

"Neither Congress nor the Department of Labor could have intended, by using the substitution language, to allow employers to evade the FMLA by providing their employees with paid sick leave benefits." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001). The FMLA permits employers who have paid time off policies to permit employees to use their paid time either sequentially or concurrently with their FMLA leave. *Id.*; *see also* 29 C.F.R. § 825.207(f). Irrespective of whether an entitled employee has exhausted his paid time off, he is still entitled to the protections of the FMLA. *See Strickland*, 239 F. 3d at 1206 (finding that "the district court erred in holding that an employee who has not exhausted his paid sick leave is not entitled to the protections of the FMLA."); *Whitfield v. Hart Cty., Ga.*, No. 3:13-CV-114 CDL, 2015 WL 1525187, at *5 (M.D. Ga. Apr. 3, 2015) (denying defendant's motion for summary judgment where defendant argued plaintiff was

not entitled to FMLA leave before exhausting her paid leave pursuant to the employer's policy because "such a policy violates the FMLA."); *Leuzinger v. Cty. of Lake*, No. C 06-0398 SBA, 2007 WL 1280582, at *10 (N.D. Cal. Apr. 30, 2007) ("it is a misinterpretation of the FMLA to maintain that an employee who has not exhausted all of his or her other forms of leave is not entitled to the protections of the FMLA.").

In *Crossley v. City of Coshocton*, the plaintiff was terminated after using her sick days, but before using FMLA-designated leave.  No. 2:13-CV-804, 2015 WL 1247005 (S.D. Ohio Mar. 18, 2015).  The employee had submitted a request for FMLA leave; however, the defendant did not provide her with a rights and responsibilities notice or eligibility notice.  *Id*. at *1. Instead of FMLA leave, the employee was granted, and used, 13 paid sick days.  *Id*. at *2.  The employer subsequently terminated her.  *Id*.  In its motion for summary judgment, the employer argued that the plaintiff could not satisfy her burden to show that she had been denied a benefit under the FMLA to which she was entitled because she had not exhausted her paid sick leave. *Id*. at *4.  The court recognized that employers may elect to "run paid sick leave and unpaid FMLA leave consecutively, **thereby granting the employee a more generous benefit than the FMLA alone would provide**."  *Id*. at *5 (*emphasis supplied*).  The court reasoned that consecutive leaves are allowed to provide a greater benefit, not to abrogate the protections of the FMLA by allowing employers a loophole to escape liability through designation.  *Id*.  The court rejected the defendant's argument and denied summary judgment on the interference claim because the plaintiff could demonstrate harm where she had been terminated before using the full amount of FMLA leave she would have been entitled to, even though the leave had been designated as paid sick leave.  *Id*.

Similarly, Defendant elects to run paid time off consequently with unpaid leave and now claims that Cooper cannot show harm because he had not exhausted his accrued time off.  This assertion contravenes governing law and seeks to abrogate their responsibilities under the FMLA.  Consequently, whether Cooper exhausted his paid leave does not impact his ability to find protection under the FMLA.

i.  Issues of Fact Exist Regarding Whether Cooper Exhausted Paid Leave.

Although Cooper was not required to exhaust paid time off in order to receive the protections of the FMLA, it is also unclear whether Cooper had, in fact, exhausted his accrued time off prior to his leave beginning September 8, 2016.  The Beelman handbook refers only to paid vacation time, which accrues on the anniversary of the employee's start date.  According to Defendant's handbook, after one year of employment an employee receives one week of vacation, and after three years of employment an employee receives 2 weeks of vacation.  Vacation accrues as of the employee's anniversary date and does not roll over from year to year.  The FMLA policy refers to "vacation and any other accrued paid time off", but the handbook does not provide for or define what other paid time off accrued to employees. However, Butler testified that Cooper received one week of "paid time off" after one year.  Pltf. Ex. 1, Butler Dep. at 19:1-3.  According to the Driver Report, from March 14, 2016 through September 7, 2016, Cooper was absent 5 times, for a total of 7 days.  See Driver Attendance Report, Def. Appx. 022. Consequently, if Cooper received one week total of paid time off, then he had exhausted it prior to his leave on September 8, 2016.  Yet, the issue is further obfuscated because Butler also testified that after two years of employment Cooper would have had two weeks of vacation.  Pltf. Ex. 1, Butler Dep. at 18:23-25, 19:1-9.  Therefore, if the Court were to find that Cooper was required to exhaust his paid time off, then there exists a genuine issue of material fact regarding

how much paid time off Cooper had accrued prior to September 8, 2018 and whether he had exhausted it.

### B. Defendant Did Not Produce Any Credible Evidence That Cooper was Terminated for Any Reason Other Than His Absences.

Although an employer has the right to terminate an employee on FMLA leave for unrelated reasons, the employer cannot interfere with the employee's FMLA rights and subsequently create an *ad hoc* basis for the termination solely to escape liability.[2]  Defendant repeatedly affirmed that Cooper was terminated for absenteeism – not for any other reason. "[T]he inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not." *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1048 (7th Cir. 1999) *quoting O'Day v. McDonnell Douglas Helicopter Corp.,* 79 F.3d 756, 759 (9th Cir.1996).  Defendant was aware of all of Cooper's other supposed infractions at the time the decision was made to terminate him.  Despite this, Cooper was terminated because of his "repeated absences in violation of Beelman's attendance policy."  See Pltf. Ex. 3, Def. IROG at ¶ 3.  In particular, Butler testified, and the documentary evidence reflects, that he terminated Cooper because of his September and October 2016 absences – not for violations of the call-in procedures, insubordination, or performance issues.  Consequently, Defendant cannot successfully avail itself of the defense that it would have terminated Cooper irrespective of his FMLA leave.

"Proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made." *Sheehan*, 173 F. 3d at 1048 (*internal citations omitted*).  Cooper's alleged failure to follow the Company's call-in procedures and

---

[2] Defendant argues that Beelman did not deny Plaintiff any FMLA benefit or retaliate against Plaintiff. Plaintiff's only claim is FMLA interference, not retaliation.  See D.E. 9, 17, 06/08/2018 Order.

insubordination was known to Butler at the time he terminated Cooper and was not a factor in his termination.  At his deposition, Butler could not actually identify any times when Cooper failed to follow the Company's call-in procedures; furthermore, Butler testified that he terminated Cooper because of absenteeism.  Defendant's Answers to Interrogatories state that Cooper was terminated for absenteeism, without mention of any other reason.  The termination report also states that Cooper was terminated for absenteeism.  Defendant claims, without support in the record, that Cooper was terminated for absenteeism and his refusal to provide a doctor's note.  However, the termination report makes no mention of a doctor's note.  Where the report states "[d]escribe in detail reason for absenteeism", Butler wrote "Mark was discharged for absenteeism." Def. Appx. 001.  In addition, Butler's October 3rd email refers only to Cooper's absences, and the difficulties those absences caused, as the reason why he was considering termination. See Pltf. Ex. 7.  Moreover, although the Beelman Handbook states that a doctor's note is required, Butler's October 3rd email demonstrates that it was not consistently applied.  A jury may reasonably infer that if the Defendant had been clear in communicating its policies or consistent in applying them, then the terminal manager, Butler, would not need to ask whether or not he should have Cooper bring in a doctor's note. *See Cuff v. Trans States Holdings, Inc.*, 816 F. Supp. 2d 556, 569 (N.D. Ill. 2011) ("[t]he after-acquired evidence inquiry focuses on an employer's actual practices, so it is not enough for Defendants to contend they would have been justified in firing [plaintiff]; they must show that they actually would have done so.")

Defendant also fails to put forth any evidence to suggest that Cooper had failed to follow call-in procedures for his September 8th absence.  According to Defendant, Cooper should have called in sick by 7:00AM on September 8.  First, Cooper's absences from September 8 through 14 qualified for FMLA protection.  It is undisputed that Cooper did not have prior notice of his

need for leave; therefore, Beelman's policy requires merely that he notify the Company within 48 hours of when he determined his need for leave. Cooper's back pain flared up on the evening of September 7, he called the Company and told them he could not work and would be seeking medical attention on the morning of September 8, i.e. within 48 hours of when he determined his need for leave; therefore, he was compliant with the Company's procedures for unforeseeable leave. *See also Woodman v. Miesel Sysco Food Serv. Co.*, 254 Mich. App. 159, 173–75, 657 N.W.2d 122, 131–32 (2002) (plaintiff provided proper notice by calling his dispatcher even though he failed to comply with the leave provisions of his collective bargaining agreement because the FMLA cannot be diminished by such an agreement).

### i. Defendant Interfered by Using Protected Leave as a Factor in its Decision.

Even assuming *arguendo*, that Defendant terminated Cooper for violations of its call-in policy or insubordination, Beelman still relied upon Cooper's absences, including his FMLA protected absences, as a factor in terminating him. Unlike a retaliation case, Plaintiff is not required to establish the Defendant's intent to prevail on his interference claim. *Burnett*, 472 F.3d at 477. "Interference also encompasses "us[ing] the taking of FMLA leave as a negative factor in employment actions." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) *quoting* 29 CFR 825.220(c). As detailed *supra*, the termination report, Butler's email, Defendant's Interrogatory Answers, and Butler's testimony conclusively establish that Cooper's absences from September 8-14, 2016 were a factor in terminating Cooper. By relying on those absences as a factor in Cooper's termination, Defendant denied him benefits and interfered with his rights under the FMLA. *See Murphy v. Brown*, No. 08 C 4520, 2010 WL 1292704 (N.D. Ill. Mar. 29, 2010); *Sims*, 2 F.Supp.2d 1253.

ii.  Issues of Fact Exist Regarding Whether Cooper Followed Call-in Procedures.

Alternately, although Plaintiff maintains that Cooper's call-in times are immaterial, if the Court finds that the call-in procedure is relevant, then there exists a genuine issue of material fact regarding whether Cooper followed procedure.  Butler, Sadler, and Cooper did not testify as to what times Cooper called in.  No phone records have been produced to show what times Cooper called in.  Critically, the evidence does not establish Cooper's exact work schedule after January 1, 2016.  From March 2014 until the Company lost its coal contract on January 1, 2016, Cooper worked the night shift, which started at 6:00PM.  After January 1, 2016, Cooper was reassigned to the day shift.  According to Defendant, Cooper began work at 3:30AM.  Cooper actually testified that he worked "basically my own hours" and that he "probably" started work "about 3:00, 3:30 in the morning" when he was working on the gypsum run, i.e. a specific route.  Pltf. Ex. 2, Cooper Dep. 77:2, 10-14.  According to Butler, the day shift is not a set job, so there is no single start time.  Id. at 21-23.  In fact, the hospital records reflect that Cooper was injured around 18:00, i.e. 6:00PM, on September 7, 2018.  If Cooper was driving the pumpkin around 6:00PM on September 7, then that does not fit with the supposed 3:30AM to 3:30 PM schedule.  Consequently, a reasonable jury may infer that (i) Cooper's start time varied, and (ii) Cooper called in with sufficient time to comply with Defendant's policy.  Therefore, if the Court finds that Cooper's compliance with Defendant's call-in procedures is relevant, there exist genuine issues of material fact such that Defendant's Motion must be denied.

**CONCLUSION**

For the reasons stated herein and in Plaintiff's Motion for Summary Judgment, Cooper respectfully requests that the Court grant his motion for summary judgment as to liability, deny

Defendant's motion for summary judgment in full, and award Cooper any other relief that the

Court deems just and proper under the circumstances.

Dated:  September 4, 2018

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880

Respectfully submitted,
MARK COOPER


By: /s/ Alexis D. Martin
    Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she caused a copy of the attached document, **Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment**, to be served upon the party below by electronically filing with the Clerk of the U.S. District Court of the Central District of Illinois on September 4, 2018.

Ted L. Perryman (*tperryman@robertsperryman.com*)
Korissa M. Zickrick (*kzickrick@robertsperryman.com*)
Andrew P. Laquet (*alaquet@robertsperryman.com*)
Roberts Perryman, P.C.
1034 South Brentwood Blvd, Suite 2100
St. Louis, Missouri 63117

By: /s/ Alexis D. Martin
Caffarelli & Associates Ltd.
224 South Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880

26