IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MARK COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-3102 |
| ) | |
| BEELMAN TRUCK CO., ) | |
| ) | |
| Defendant. ) | |

<u>OPINION</u>

RICHARD MILLS, United States District Judge:

The Plaintiff alleges the Defendant interfered with his rights under the Family and Medical Leave Act ("FMLA"), pursuant to 29 U.S.C. § 2601 *et seq*.

Pending are motions for summary judgment filed by both parties.

      I.  FACTUAL BACKGROUND

(A)

Plaintiff Mark Cooper was employed by Defendant Beelman Truck Co. from March 2014 through October 5, 2016. Beelman is a Delaware corporation that does business in Illinois providing dry bulk commodity transportation services (i.e., commercial trucking) with facilities throughout the Midwest. Cooper worked out of Beelman's Springfield, Illinois location. In 2015, approximately 90 employees

1

worked for Beelman out of Springfield. After January 1, 2016 through Cooper's termination, Beelman employed approximately 78 drivers in Springfield.

At the start of his employment, Cooper was given a copy of Beelman's Employee Handbook, which included the company's written policies regarding sick leave, FMLA leave, call-out procedures and progressive discipline. Cooper signed to indicate he had read and understood the handbook. Beelman has a poster describing the FMLA in the break room of its Springfield facility.

Mick Butler has worked for Beelman from 2011 through the present. Throughout his employment with Beelman, Butler has held the position of Terminal Manager at the Springfield location. Butler hired Cooper and was Cooper's direct supervisor during his employment. Cooper did not have any other boss or supervisor in Springfield. Throughout 2015 and 2016, Cooper worked approximately 50 hours per week.

Cooper alleges he suffered a herniated disc approximately 15 years before joining Beelman and continued to have flare-ups of acute back pain intermittently over the years. The flare-ups would occur suddenly and unpredictably. Beelman disputes Cooper's assertion and claims no objective medical evidence supports it. The records show mild degenerative disc disease at the L5-S1 level.

On February 17, 2015, Cooper reinjured his back while at work. Cooper reported that he had increased pain when leaning forward and his pain increased

2

when he was driving his truck at work due to bouncing that would occur. At the emergency room, Cooper was diagnosed as having low back pain and back muscle spasms. He was prescribed Flexeril, Ibuprofen and home exercises. On February 19, 2015, the doctor wrote a note stating: "Please stay home from work tomorrow to rest back." Cooper was discharged from the hospital on February 19, 2015.

Cooper was absent from work due to his back injury from February 23 through February 26, 2015 and was treated for his back pain. Beelman disputes that Butler knew Cooper had injured his back in February of 2015, except that he was aware Cooper had those days off and said it was because of his back. Cooper returned to work without pain or restrictions.

Cooper testified he aggravated his back in May of 2016. He did not report the injury to Beelman and did not seek medical treatment. Cooper testified that he called Mick Butler and told him he was going to take a few days off because his back was hurting from shoveling ash. Cooper did not report any specific incident to Beelman's safety department. He testified that he did not feel like it was that bad.

Cooper did not work from September 4, 2016 through September 6, 2016, in order to have a colonoscopy. He returned to work on September 7, 2016. On that same day, Cooper was hauling a load of pumpkins from Southern Illinois to Morton, Illinois. Cooper alleges that, during the drive, he drove his truck over bumpy roads, which resulted in him experiencing back pain that evening. Beelman disputes the

allegation on the basis that Mick Butler asked if he had injured his back and Cooper responded, "not that he was aware of."

On the morning of September 8, 2016, Cooper called Butler to inform him that his back was bothering him and he would not be coming to work.  Cooper did not tell Butler how long he would be out.  Butler informed Cooper that he needed to bring a doctor's excuse stating he could come to work without any restrictions in order to return to work.  Beelman contends the notice Cooper provided that he was not coming into work did not comply with Beelman's call-in procedures.  Cooper disputes the allegation, alleging the record fails to establish what time he called off work on September 8, 2016, or what time he was scheduled to work that day.

The same day, Cooper went to the Memorial Hospital Emergency Room due to what he says was severe back pain.  Beelman claims that the records do not support his assertion that he went for "severe back pain."  The hospital records state:

> The patient presents with back pain and had severe back pain 20 years ago that resolved after steroid injections.  He had severe back pain 2 years ago that also resolved.  The back pain started yesterday while driving a semi truck over bumpy country roads.  Feels similar, no new injury.

The doctor reported the following "Impression: low back pain."  Cooper was discharged to home with his condition improved.

Cooper was given prescriptions for medications which included hydrocodone-acetaminophen, hydromorphone and Flexeril, which he was instructed to take from

4

September 8, 2016 through September 11, 2016. He was also prescribed prednisone which he was instructed to take from September 8, 2016 through September 15, 2016. Cooper was also prescribed an injection of Dilaudid. The prescription orders given to Cooper for the hydrocodone-acetaminophen stated, "DO NOT OPERATE MACHINERY OR DRIVE."

Cooper took the medications as prescribed. When discharged, Cooper was instructed to follow up with a physician if his symptoms continued or worsened. On September 12, 2016, Cooper saw his physician, Dr. Akshra Verma, at SIU School of Medicine as a follow up to his hospital visit and for further treatment of his back pain. Cooper claims that he had continued to experience back pain since his visit to the emergency room despite taking his prescribed medications. Dr. Verma diagnosed the Plaintiff as having lumbar back pain.

Cooper alleges that, from September 8, 2016 through September 14, 2016, his back pain made it nearly impossible for him to drive. He struggled to get out of bed without help, had trouble bending over and had difficulty getting dressed. Beelman disputes these allegations and claims that Cooper merely told Butler his back was bothering him. Moreover, the medical records do not reflect or support this statement.

Dr. Verma prescribed Flexeril and Norco to take for his back pain as needed. Cooper took the medications as prescribed. He was still taking the prednisone that

5

was prescribed at the emergency room. Dr. Verma also gave Cooper a note stating only that he could return to full duties at work as of September 15, 2016. Beelman claims the letter lacks details and neither supports the contention that Cooper had a serious medical condition nor does it provide notice to Beelman that implicated the FMLA. The letter does not state the reason why Cooper should be off work, the date his problems began and what treatment, if any, Cooper was provided.

Cooper gave Butler his doctor's note. Butler did not ask Cooper for any additional information. Cooper returned to work on September 15, 2016. He did not experience any additional back flare-ups between September 15, 2016 and October 5, 2016.

On September 28, 2016 Cooper's dispatcher, Pat Sadler, asked for volunteers to work over the weekend of October 1-2, 2016. Cooper said he could not work because he would be out of town.

Cooper was absent from work on October 3 and 4, 2016, because he had the flu. On October 3, 2016, Cooper emailed Sadler at 9:11 a.m. to inform her he would not make it in because he was sick. Sadler responded by telling Cooper to come back with a doctor's note before returning to work. Cooper replied, "im not spending money to go to the doctors. i just got some medicine from the store." Cooper refused to provide a doctor's note.

On October 4, 2016, Cooper did not inform Sadler that he would not be at work due to illness. If Cooper contacted Butler to tell him he was not coming in on October 4, 2016, he would have given this notice around 7:00 a.m. During this time frame, Cooper generally began his workday at 3:00 or 3:30 a.m.

(B)

On October 5, 2016, when Cooper reported for work, Butler terminated him for absenteeism. Beelman claims absenteeism was not the only reason for Cooper's termination. Beelman alleges Cooper failed to follow company policy for reporting time off in a timely matter on two occasions and for not providing a doctor's excuse slip for the absence on September 8, 2016, after waiting four days to go to the doctor a second time on September 12. Moreover, Cooper was terminated for being insubordinate in refusing to provide a doctor's note for his alleged absence due to the flu on October 3-4, 2016, per company policy.

According to an email dated October 3, 2016, Butler said Cooper's absences had made it harder for Cooper's dispatcher to get her work done. Butler asked Scot Walker, Beelman's safety director, whether he thought Cooper needed to bring a doctor's note with him when he returned from his alleged flu on October 3 and 4, 2016.

The Employee Handbook sets forth the Call-In Procedure and Absenteeism Policy, to wit:

If you are unable to work because of sickness or injury, you must call in and inform your dispatch or terminal manager at least **three (3) hours** prior to your scheduled departure time. You must give reason for your absence at this time.

If you are going to be late for work, you must contact your dispatch or terminal manager as soon as possible and inform them of why you will be late. The dispatcher or terminal manager will take the necessary measures to handle the situation at that time.

As a driver, your presence on time is vitally important. Excessive and/or unexplained absences, tardiness, or failure to follow the call-in procedure will result in disciplinary action and could jeopardize your future with the company.

Repetitive or habitual absenteeism or tardiness will not be tolerated and will subject the employee to disciplinary action.

Any absence over one consecutive working day will require a doctor's note. The note must be given to your dispatcher or terminal manager. This note should detail the reason as to why you have been off work.

Any employee who fails to call-in within 24 hours will be considered AWOL. Anyone who reaches AWOL status will be suspended without pay pending termination to investigate the reasons why he/she did not call in.

The Company Standards for Beelman in the Handbook state:

Disciplinary action, ranging from counseling to discharge, depending on the seriousness of the offense, will be taken for violations of the following company rules:

*****

*Repetitive or habitual absenteeism and lateness. An employee who is unable to report to work must inform his/her dispatch, supervisor, or terminal manager. **Notice must be given a minimum of three hours prior to scheduled departure time."**

*****

*Failing to obey instructions of authorized personnel.

*****

*Ignoring or violating safety rules or common sense safety practices.

The handbook also contains a FMLA policy, which reads in pertinent part:

> Except where leave is not foreseeable, all employees requesting FMLA leave must submit the request in writing to their terminal manager. The Vice President of Operations of the Company must approve all leaves.
>
> When an employee plans to take FMLA leave, the employee must give the Company thirty (30) days' notice. If it is not possible to give 30 days' notice, the employee must give as much notice as is practicable. An employee undergoing planned medical treatment is required to make a reasonable effort to schedule the treatment to minimize disruptions to the Company's operations.
>
> In the event the leave is not foreseeable, notice must be given to the employee's manager or to the Vice President of Operations, within forty-eight (48) hours of the time when the employee determines that a request for leave was made.
>
> Employees requesting leave for his/her own serious health condition or the serious health condition of a family member will be required to provide certification of the need for the leave before the request will be approved. When an employee has taken FMLA leave for his/her own serious health condition, a doctor's release authorizing the return to work must be provided before the employee will be permitted to return to work.

The Handbook further states, "Employees on FMLA leave must use all of their unused vacation and any other accrued paid time off before beginning unpaid leave."

Mick Butler alone decided to terminate Cooper. Butler never discussed the FMLA with Cooper. He did not refer Cooper to Beelman's corporate office so he could apply for FMLA leave. Butler never gave Cooper any documents, including application forms, regarding the FMLA.

Cooper alleges that, other than the Employee Handbook distributed to him at orientation, no other Beelman representative gave Cooper any documents regarding the FMLA. Beelman disputes the allegation and states that it also displayed an FMLA poster in the driver's break room. Cooper never spoke to anyone at Beelman regarding FMLA leave.

Approximately seven months after Cooper's termination, on May 9, 2017, he returned to SIU because of a flare-up with his back pain due to his degenerative disc disease of L5-S1. The physician prescribed Flexeril, Norco and Gabapentin for his back pain.

Cooper alleges that he was terminated because of absences which qualified for FMLA protection, thereby interfering with and violating his rights under the FMLA. Cooper alleges summary judgment is warranted on that basis.

Beelman contends Cooper did not have a "serious health condition" under the FMLA and was not denied benefits to which he was entitled. Beelman asserts it is entitled to summary judgment for those reasons.

## II. DISCUSSION

A. <u>Legal standard</u>

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all

inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). When cross-motions for summary judgment are under consideration, a court construes "all inferences in favor of the party against whom the motion under consideration is made." *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

B. <u>Defendant Beelman's motion</u>

(1)

Beelman seeks the entry of summary judgment, claiming that: (1) Cooper did not have a qualifying "serious health condition" under the FMLA; (2) he did not provide sufficient notice to Beelman as required under its policy; and (3) Beelman did not deny Cooper FMLA benefits to which he was entitled because Cooper had not used his unused vacation days pursuant to Beelman's policy, and Beelman would have terminated Cooper regardless of the application of any FMLA related leave.

Under the FMLA, an employer must not "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). "An employee is entitled to leave under the FMLA if (1) []he is afflicted with a serious health condition, and (2) that condition renders [him] unable to perform the functions of [his] job." *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (internal quotation marks and citation omitted). A "serious health condition" is defined in part as "an illness, . . . impairment, or . . . mental condition that involves . . . continuing treatment by a health care provider," 29 U.S.C. § 2611(11)(B), and a "period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). "Incapacity" means the "inability to work . . . or perform other regular daily activities due to the serious health condition." 29 C.F.R. § 825.113(b). "Because 'incapacity' means the employee is unable to work 'due to the serious health condition,' a finding of incapacitation goes toward the second prong of our analysis as to when an employee is entitled to leave." *Hansen*, 763 F.3d at 836. Given that an employee with a chronic health condition might not always visit a medical provider during a flare-up of that condition, incapacity can be established by lay testimony. *See Hansen*, 763 F.3d at 839. Continuing treatment can include "a course of prescription medication." 29 C.F.R. § 825.113(c).

Cooper testified that there were occasions at work upon finishing his shift that he could barely get out of his truck or into his car. In his declaration, he states that from September 8, 2016 through September 14, 2016, he had difficulty lying in bed because of back pain and at times needed help getting out of bed. Cooper further stated that he struggled to bend over and getting dressed was also painful.

An employee may be incapacitated not only due to a serious health condition, but also due to the treatment of the condition. *See* 29 C.F.R. § 825.113(b). The record establishes that Cooper was prescribed hydrocodone-acetaminophen (Norco) on September 8, 2016, to be taken over a 3-day period. Therefore, his prescription would have run out on September 11, 2018. The instructions for Norco stated, "MAY CAUSE DROWSINESS, DO NOT OPERATE MACHINERY OR DRIVE." On September 12, 2016, Dr. Verma again prescribed Norco and gave Cooper a note which stated, "Mr. Cooper may return to full duties at work as of 9/15/2016."

Because Cooper worked as a truck driver, it would not have been advisable for him to report to work while he was taking that prescription over the course of seven days. Given that circumstance and based on Cooper's statements regarding his daily activities, the Court concludes there is at least a question of fact regarding whether he was incapacitated for three or more days and, based on his course of prescription medication, whether Cooper suffered from a serious health condition because of that continuing treatment.

(2)

"An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave and otherwise satisfy the notice requirements . . . depending on whether the need for leave is foreseeable or unforeseeable." 29 C.F.R. § 825.301(b). "An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." *Id.* "[T]he notice inquiry is a fact-rich question . . . perhaps best resolved by the trier of fact." *Pagel v. TIN Inc.*, 695 F.3d 622, 628 (7th Cir. 2012) (internal quotation marks omitted).

Beelman notes that Cooper called Butler on September 8, 2016 and said he was not coming to work because his back was not bothering him. He did not say he could not perform the functions of his job duties. Moreover, Cooper did not say how long he would be off work and did not indicate it would be more than three days. Cooper did not say he was under a doctor's continuing care or that he was supposed to receive follow-up care. He did not mention that he had been prescribed a round of medication.

While Cooper could have provided more detail, the Court notes that Butler was aware Cooper had injured his back on at least two prior occasions. Cooper provided Butler with a note stating Cooper could return to work after a 7-day absence. Beelman could have requested that Cooper provide additional information if it believed more was needed. Although it appears that on September 8, 2016, Cooper may not have complied with Beelman's call-in policy regarding the 3-hour notice period for sickness or injury, the Court cannot make that determination because the record does not specify what time Cooper called Butler or Cooper's specific departure time. Accordingly, the Court concludes there is a genuine issue of material fact regarding whether the notice was sufficient.

(3)

A plaintiff must also establish that he was denied FMLA benefits to which he was entitled. The Beelman Handbook states: "Employees on FMLA leave must use all of their unused vacation and any other accrued paid time off before beginning unpaid leave." An employer may require an employee to substitute any accrued paid vacation leave, personal leave or sick leave for leave provided under the FMLA. *See* 29 U.S.C. § 2612(d)(2)(A).

Even assuming that Cooper was required to exhaust his paid time off in order to receive the protections of the FMLA, there appears to be a factual dispute regarding whether Cooper had exhausted his accrued time off prior to his leave

beginning on September 8, 2016. Beelman contends that Cooper did not exhaust his paid leave under the Beelman policy.

The Beelman handbook refers only to paid vacation time, which accrues on the anniversary of the employee's start date. Cooper started in March 2014. The handbook provides that after one year of employment, an employee receives one week of vacation. It further provides that after three years of employment, an employment receives two weeks of vacation. Vacation accrues as of the employee's anniversary date and does not roll over from year to year. The handbook does not provide for or define whether any paid time off other than vacation accrues to employees. Butler testified that Cooper received one week of "paid time off" after one year. According to the Driver Report, from March 14, 2016 through September 7, 2016, Cooper was absent 5 times, for a total of 7 days. Therefore, if Cooper received one week total of paid time off, then he had exhausted it prior to his leave on September 8, 2016. It appears that Cooper would have been entitled to one week paid time off because he had not yet been employed for three years at Beelman.

However, Butler testified that Cooper would have had two weeks of vacation after two years of employment. If this were the case, then Cooper would not have exhausted his accrued time off on September 8, 2016.

Accordingly, the Court finds there is a factual dispute regarding how much paid time off Cooper had accrued prior to September 8, 2016, and whether he had exhausted it.

The reason given for Cooper's termination was "repeated absences in violation of Beelman's attendance policy." To the extent Beelman now claims that Cooper was terminated for reasons other than excessive absences, there is at least a genuine issue of material fact regarding the reason for termination. Accordingly, there is a factual dispute regarding whether Cooper was terminated for his absenteeism and, thus, whether Beelman denied him benefits and interfered with his rights under the FMLA.

Based on the foregoing, there are genuine issues of material fact which preclude the entry of summary judgment in favor of Beelman.

C. Plaintiff Cooper's motion

Plaintiff Mark Cooper alleges the undisputed facts show that Beelman deprived him of a substantive right under the FMLA. Cooper asserts the facts establish: (1) he was eligible for the FMLA protections; (2) Beelman was covered by the FMLA; (3) he was entitled to leave under the FMLA for his absence from September 8 through 14, 2006; (4) he provided sufficient notice of his need to take leave to his employer; and (5) Beelman failed to designate his leave as FMLA-

protected and, instead, terminated him because of his medical leave absences. Cooper claims he is entitled to summary judgment as a result.

Beelman claims Cooper's motion should be denied for the following reasons: (1) Cooper has failed to show by uncontroverted material facts that he had a serious health condition under the FMLA either as a chronic condition or under the continuing treatment prongs of 29 C.F.R. § 825.115, in that there is no medical evidence that his low back pain was a chronic condition, that he was unable to perform the functions of his job or that he had continuing treatment for more than three consecutive days; (2) Cooper has failed to demonstrate that he provided Beelman with enough information to establish probable cause that Cooper may have entitlement to FMLA leave; and (3) Cooper failed to show that Beelman denied him benefits owed under the FMLA because Beelman did not and would not have needed to rely on any allegedly FMLA-protected leave when it made its decision to terminate Cooper.

The Court earlier determined that there were genuine factual disputes regarding whether Cooper was incapacitated for three or more days and whether he suffered from a serious health condition based on his course of treatment. Moreover, the Court found there was a question of fact regarding whether Cooper provided Beelman with sufficient notice of his need for FMLA leave. The Court also found there was a genuine issue of material fact regarding whether Cooper had exhausted

his accrued leave and whether Beelman interfered with Cooper's rights under the FMLA.

Because of these factual disputes, the Court will deny the Plaintiff's summary judgment motion.

Ergo, the Defendant's Motion for Summary Judgment [d/e 18] is DENIED.

The Plaintiff's Motion for Summary Judgment [d/e 19] is DENIED.

ENTER: January 3, 2020

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge